BRYAN WILSON TAYLOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Taylor v. Commissioner
Docket No. 13630-78.
United States Tax Court
T.C. Memo 1982-382; 1982 Tax Ct. Memo LEXIS 367; 44 T.C.M. (CCH) 393; T.C.M. (RIA) 82382; July 7, 1982. James F. Gaulding, for the petitioner. Richard D. Ames, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes: Addition to Tax
Sec. 6653(b),
Sec. 6654,
Year
Deficiency
I.R.C. 1954
I.R.C. 1954
1968
$8,744.43
$4,372.22
$279.84
1969
13,312.50
6,656.38
426.00
1970
29,027.07
14,513.54
928.86
1971
47,331.03
23,665.52
1,514.59
1972
30,970.39
15,485.20
991.04
1973
23,857.06
11,928.53
763.42
*368 Petitioner has conceded that the section 6654 [1] additions to tax are applicable. The parties have stipulated as an exhibit a schedule showing petitioner's gross income and taxable income for each of the years in issue with the proviso that the only item in dispute is the amount, if any, of the unsubstantiated travel expenses. Petitioner, however, on brief does not argue that the evidence shows the required substantiation of those expenses and we treat that issue as abandoned. As a result, the only issue for decision is whether any part of petitioner's underpayment of tax was due to fraud within the meaning of section 6653(b). [2]
*369 FINDINGS OF FACT Petitioner was a legal resident of Dallas, Texas, when he filed his petition. He did not file timely Federal income tax returns or pay any income tax for 1968 through 1973. In May 1981, petitioner filed delinquent income tax returns for each of those years. In 1968, petitioner had income in the total amount of $32,535.36 from employment as a commissioned insurance salesman for Life Insurance Consultants, Westamerica Securities, Inc., and C.H. Hendricks & Co., Inc. He received a Form 1099 from each company reflecting his commissions. During 1969 through 1973, inclusive, petitioner was a self-employed mortgage broker, and the principal source of his income was from monies received from clients for obtaining loan commitments from third parties. He obtained clients mainly by advertising in the Dallas newspapers and the yellow pages of the telephone books. Petitioner would enter into agreements authorizing him exclusively to negotiate on behalf of his clients for loan commitments for such projects as apartment complexes, office complexes, shopping centers, or the like. He would prepare a prospectus and a package of materials on a client's proposal for presentation *370 to banks, insurance companies, and other financial institutions for a possible loan. Petitioner did not actually obtain any loans for his clients, but he received advance payments of funds which he used for living, business, and other expenses. These advance payments were the principal source of his income in 1969 through 1973. In some instances, after making an accounting with his client, he refunded a part of the advanced funds. The Internal Revenue Service's determinations of taxable income gave him credit for these refunds. During 1969 through 1973, all advances of funds received from clients were deposited in bank accounts except one $2,500 cashier's check and its receipt was reflected in petitioner's records. In 1969, petitioner had five accounts in three banks. In 1970, he had five accounts in two banks, having added three new accounts and dropped three old accounts. In 1971, petitioner had three accounts in one bank, all of which had been in use in 1970. In 1972, he had four accounts in two banks and three of those accounts, all in the same bank, had been in use in 1970 and 1971. In 1973, he had five accounts in five different banks. Three of these accounts were *371 established in 1973. During 1969 through 1973, petitioner made bank deposits (adjusted for redeposits) in the following amounts: Year
Deposits
1969
47,033.20
1970
106,441.55
1971
169,403.39
1972
137,615.86
1973
102,848.00
These deposits were gross receipts from his mortgage brokerage business. Petitioner was indicted in a 27-count indictment for violation of Title 18, U.S.C., sec. 1341, the mail fraud statute, in connection with his mortgage broker activities. He was first tried to a jury. After deliberations began, but before a verdict was returned in open court, one juror suffered a heart attack and died shortly thereafter. The district court judge satisfied herself that all twelve jurors had reached agreements on counts 7, 9, and 11 of the indictment and thereupon accepted a verdict of guilty on those counts and entered sentence; a mistrial of the other counts was declared. An appeal was taken, and the court of appeals reversed the conviction. United States v. Taylor,507 F.2d 166 (5th Cir. 1975). Thereafter, on March 28, 1975, petitioner was convicted on a plea of guilty to counts 7, 9, and 11 of *372 the indictment. He was sentenced to a fine of $1,000 and to imprisonment of 5 years on each of counts 7 and 11, to run concurrently, and was sentenced to a fine of $1,000 and 5 years probation on count 9, with the probation to run consecutively to the sentence on counts 7 and 11. Petitioner was released on parole on June 15, 1976. At the time of petitioner's trial on the mail fraud charges, he informed his attorneys of his delinquency in filing income tax returns and those attorneys sent petitioner to a certified public accountant to have his returns filed. Petitioner did not deliver to the accountant any journals, ledgers, or other records normally kept in the ordinary course of business but did give to the accountant canceled checks, bank statements, check stubs, and deposit slips. Although petitioner's records were in a disorderly condition, the accountant could have prepared returns based on those records if he had received help from petitioner. The accountant advised, however, that he would have to be paid as the work progressed. Because no payments were forthcoming, the accountant stopped work on the returns and ultimately turned the records over to the Internal Revenue *373 Service. In September 1974, while petitioner was in prison awaiting the outcome of his appeal of his conviction based on the jury verdict, petitioner declined, on advice of his attorney, to discuss his income tax liability with a revenue agent. Later, petitioner cooperated with the revenue agent in computing his tax liability. Respondent determined the deficiencies set forth above by treating petitioner's bank deposits as gross receipts and allowed deductions for certain amounts of business expenses. As noted above, petitioner in his petition claimed deductions for additional amounts, including travel expenses which were not allowed for lack of substantiation pursuant to section 274, but offered arguments in his brief only on the section 6653(b) fraud issue. OPINION Section 6653(b) calls for a 50-percent addition to tax if any part of the underpayment is "due to fraud." To establish fraud, the evidence must show intentional wrongdoing on the part of the taxpayer motivated by a specific purpose to evade a tax known or believed to be owing. Marsellus v. Commissioner,544 F.2d 883, 885-886 (5th Cir. 1977), affg. a Memorandum Opinion of this Court; Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); *374 Powell v. Granquist,252 F.2d 56, 60 (9th Cir. 1958). The showing must be clear and convincing. Cirillo v. Commissioner,314 F.2d 478, 482 (3d Cir. 1963), affg. in part and revg. in part a Memorandum Opinion of this Court. We think respondent has made the requisite showing. We begin with the fact that petitioner did not file income tax returns for any one of the 6 years here in dispute until May 1981, shortly before the trial of the instant case. He had substantial gross income and a substantial tax liability in each year. He does not deny that he was fully aware that he owed large amounts of tax. Indeed, when petitioner filed the income tax returns in May 1981, he reported taxable income for each year almost as great as the amount determined by respondent in the notice of deficiency. As a well-educated businessman engaged in dealing with investors and financial institutions on large transactions, petitioner knew that he was not discharging his duty, imposed by law, to report his taxable income and pay the tax thereon. We are fully aware the mere failure to file returns does not, without more, establish fraud, but it "may be relevant in *375 that connection." Cirillo v. Commissioner,supra at 479. Indeed, "[w]hile it is not conclusive, * * * the failure to file tax returns is persuasive circumstantial evidence of fraud." Marsellus v. Commissioner, supra at 885. "The critical question is whether the circumstances attending a particular failure to file warrant an inference of an intention to evade taxes." Cirillo v. Commissioner,supra at 482. We think it does in the instant case. Because petitioner knew he was receiving large amounts of income and incurring an increasing amount of unpaid liability for tax thereon, he must have known that discharge of his duty under the law required him to pay the tax. Otherwise, he would never discharge his obligation to pay the tax and would thereby evade it. If petitioner, in fact, intended to pay the tax, it is reasonable to expect him to have accumulated funds for that purpose. Yet there is no evidence that he accumulated any money for the payment of his known liability; indeed, he testified that when he closed his business in 1974 or 1975 following his criminal prosecution, he had no funds. Because petitioner did not *376 file returns, prepared no records to facilitate filing, and made no arrangements ultimately to pay this increasing liability, "[a]t some point, it must be concluded that he did not intend to file until his nonfiling was discovered. Such conduct constitutes willful concealment of income to evade payment of taxes." Grosshandler v. Commissioner,75 T.C. 1, 20 (1980), on appeal (7th Cir., Dec. 22, 1981). Further, petitioner testified that without using his name he contacted someone in the Internal Revenue Service regarding his having filed no returns for all or some of the years in issue. That individual urged him to file returns even though they would be late. But he did not do so, thus continuing his failure to discharge his known duty. Such failure amounted to deliberate concealment of his income from the Internal Revenue Service. Petitioner's explanation of his failure to file returns is that he went through "a period of what I would call procrastinating" as a result of the disappearance of his wife and son at the end of 1966. He could not obtain certain records from her, he testified, and was fearful that, since he did not have all of his records, he would *377 not be able to substantiate a proper return. We do not find this testimony convincing. [3]
*378 We do not think petitioner's unfortunate experience with his wife in 1966 provides any basis for a finding that he was emotionally incapable, because of fear, of attending to such business matters as filing returns for the years in controversy. [4] It must be remembered that petitioner was able to earn insurance commissions in excess of $32,500 in 1968 and to run a business which grossed in excess of $100,000 in each of the years 1970 through 1973. He was also clever enough, according to his plea of guilty, to defraud customers of large sums of money in the process of earning those amounts. Petitioner's ability to achieve these results, as we view the evidence, negates any possibility that he was not also emotionally capable of filing a return of his income. Rather, "it is a fair inference that a man who will misappropriate another's funds to his own use through misrepresentation and concealment will not hesitate to misrepresent and conceal his receipt of those same funds from the Government with intent to evade tax." McGee v. Commissioner,61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975); see also Rogers v. Commissioner,111 F.2d 987, 989 (6th Cir. 1940), *379 affg. 38 B.T.A. 16 (1938). To refute respondent's contention that petitioner's failure to keep adequate records was a badge of his fraud, petitioner, despite his contention that he was afraid his records would not substantiate a proper return, dwells at length on the evidence showing that he kept records which would have enabled an accountant to prepare returns. He cannot have it both ways. Either he did or he did not keep adequate records. Petitioner testified that he kept records of receipts from clients and of cash expenditures such as hotel bills, food expenses, and costs of entertaining clients. He testified that some of these expense records disappeared in 1972 when he dismissed a secretarial employee but that was in September of the penultimate year here in dispute. He had already failed to file returns for 1968, 1969, 1970, and 1971. After petitioner left for prison on March 8, 1974, following his mail fraud conviction, he stated that his 16-year-old son and a friend lost some of his records when they placed some of his property in storage but that was *380 several months after the close of 1973, the last year here in controversy. An accountant employed at the insistence of petitioner's attorney in 1974 to prepare returns for petitioner testified that, with petitioner's help, he could have prepared a return from the records furnished to him but did not do so because petitioner did not pay him for his services. It thus seems that petitioner's alleged "fear" was groundless. More importantly, though, is the fact that petitioner made no effort to counter the circumstances causing his "fear." He never contacted an accountant to assist him until his attorneys advised him to do so, and that occurred after he was embroiled in the mail fraud prosecution. These facts add weight to the inference that petitioner made a conscious decision to continue to evade taxes known to be due. The Court of Appeals for the Fifth Circuit has held that failure to keep complete and accurate records, in conjunction with consistent and substantial understatement of income (which, like failure to file returns, is "strong evidence" of fraud) will warrant a finding of fraud ( Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962), affg. a *381 Memorandum Opinion of this Court): The mere understatement of income, standing alone, is not enough to carry the burden cast upon the Commissioner in seeking to recover fraud penalties. But each case is to be considered in the light of its own facts. Consistent and substantial understatement of income is by itself strong evidence of fraud. This proof, coupled with the showing that the records were both incomplete and inaccurate, and that the petitioner did not supply the bookkeeper with all of the data necessary for maintaining complete and accurate records, is enough to warrant the Tax Court in finding fraud. See Webb v. Commissioner,394 F.2d 366, 379 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. In the light of all the facts here--failure to file for 6 consecutive years, knowledge that he owed taxes, disorganized and incomplete records, feeble and contradictory excuses, no provision for future payment of taxes, unreported income from an illegal activity, and other actions (such as opening and closing numerous bank accounts as detailed in our findings and writing many checks to cash)--combine to convince us that petitioner knowingly engaged *382 in a practice intended to conceal his income from the government and to evade taxes known to be due. Petitioner relies on Jones v. Commissioner,259 F.2d 300 (5th Cir. 1958), revg. and remg. 25 T.C. 1100 (1956), and states the Court of Appeals for the Fifth Circuit, to which appeal in this case would lie, will not find fraud absent an independent act of concealment and misrepresentation accompanying a failure to file (or understatement of income). While the continued validity of the Jones rule is somewhat uncertain, see Marsellus v. Commissioner,544 F.2d at 886, we think that the facts enumerated in the immediately preceding paragraph demonstrate that the case is distinguishable because petitioner deliberately concealed his income. Moreover, in reversing the Tax Court's finding of fraud in the Jones case, the court of appeals stressed that the Tax Court made no reference to Mr. Jones' lack of credibility in explaining his failure to file. This nonfiling continued for only 2 years; there was no continuing pattern of failure to abide by the law. During those 2 years, Mr. Jones used the money which would have paid taxes for *383 pressing business and personal concerns. Moreover, Mr. Jones' financial plight was at least partly due to the failure of the United States Government to pay him a claim, which he valued at $663,000 and for which, after litigation in the Court of Claims, he later received $339,000. Jones v. Commissioner,supra at 304. These facts, the appellate court reasoned, clearly indicated a willful failure by an angry and financially pressed taxpayer to file returns, but, as viewed by the court of appeals, Mr. Jones' satisfactory explanation of the circumstances of such failure negated fraud. [5]
The present case clearly falls into a very different category. Petitioner's explanation was contradictory and patently unbelievable; he made no effort to rectify the circumstances ostensibly leading to the nonpayment; there was no evidence of a future source of income which could be applied against back taxes. Moreover, as we view the evidence, it establishes sufficient independent acts of concealment to satisfy the Jones rule. See Merritt v. Commissioner, supra at 487. Petitioner *384 is evidently attempting to rehabilitate himself following his release from prison, and we recognize the difficulties that he faces. But our decision must turn on petitioner's motive and intent with respect to his taxes for the years 1968 through 1973. Cf. Vannaman v. Commissioner,54 T.C. 1011, 1020 (1970); Benes v. Commissioner,42 T.C. 358, 384 (1964), affd. 355 F.2d 929 (6th Cir. 1966). An examination of the objective facts with respect to petitioner's intentions and actions leaves us with the firm conviction that his underpayments of tax for those years were due to fraud within the meaning of section 6653(b). Due to concessions, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted. ↩
2. Respondent makes the alternative contention that, if grounds for the sec. 6653(b) addition to tax have not been shown, additions to tax under sec. 6651(a) for failure to file timely returns and under sec. 6653(a) for negligence are applicable. Petitioner agrees with respondent's alternative argument. Because we conclude, however, that fraud has been shown, we do not reach this alternative contention.↩
3. Petitioner's testimony in part is as follows: Q. Didn't you know that you had to file income tax returns? A. Yes, sir. Q. Why didn't you? A. * * * I think, analyzing my ownself, i just went into a period of what I would call procrastinating. I knew this was something that had to be done and then finally, to answer your question why it wasn't done, after two or three years went by, other than sharing it with an attorney one time, then the factor of fear came in and I didn't know what to do because the years had stacked up and I just -- I had tremendous records, but I think, to answer your question, I just procrastinated because of fear. Q. Where you feared that failure to file, for example, your 1970 return, might tip off the IRS for earlier failure to file. A. I wouldn't say that because I felt like I had substantial records enough to file and I think the word "procrastinating" those couple of times -- * * * Q. You mentioned fear. What were you afraid of? A. I think fearful of not having all my records and of not being able to substantiate.↩ Maybe, you know, just the fear of procrastinating * * *. [Emphasis added.]
4. The record does not indicate whether petitioner filed an income tax return for 1966 or 1967.↩
5. Cf. Klebanoff v. Commissioner,T.C. Memo. 1973-174↩.