In re Carl H. SONNENBERG and Jane H. Sonnenberg, Debtors.

Carl H. SONNENBERG and Jane H. Sonnenberg, Plaintiffs,

v.

UNITED STATES of America, Department of the Treasury, Internal Revenue Service, Defendants.

Bankruptcy No. 88 B 07266.
Adv. No. 88 A 0506.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Aug. 24, 1992.

David S. Newman, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S.A.

Richard G. Larsen and Charles Myler, Ruddy, Myler, Ruddy & Fabian, Aurora, IL, for debtors.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

Debtors Carl and Jane Sonnenberg ("Debtors" or "Sonnenbergs") filed this Chapter 7 adversary proceeding to confirm the dischargeability of at least $286,580.98 in taxes, penalties and interest which they owe individually or jointly to the Internal Revenue Service ("IRS" or "Service") for the taxable years 1979 and 1981 through 1984. This is a core proceeding, relating to the determination of the discharge of a debt pursuant to 28 U.S.C. § 157(b)(2)(I). The IRS opposes any discharge of the Debtors' taxes, contending that their failure to plan for upcoming tax liabilities constitutes willful tax evasion under Section 523(a)(1)(C) of the Bankruptcy Code ("Code"). A trial was held on the adversary complaint, testimony taken, evidence received, and briefs submitted.

For the reasons discussed more fully below, the Court grants the Debtors' complaint in part and denies it in part. The Sonnenbergs' 1979, 1981 and 1982 taxes are dischargeable, because the IRS has not met its burden of proof. Their 1983 and 1984 taxes are nondischargeable, however, because the tax returns were late-filed within two years of the Debtors' petition for relief.

## FINDINGS OF FACT

A. Tax Liabilities. Carl Sonnenberg ("Carl"), a self-employed independent insurance broker, is liable to the IRS for all the tax years in question, i.e., 1979 and 1981 through 1984. Co–Debtor Jane Sonnenberg ("Jane"), who married Carl in December 1983, is also liable for the 1984

taxes due to her filing a joint return with him for that year. The Sonnenbergs' income over the eight year period—from 1979, when the taxes were first incurred, through 1986, when they late-filed their 1984 tax return—and the taxes, interest and penalties sought to be discharged in this bankruptcy proceeding, are as indicated in the table below.

## TABLE: 1979–1986 INCOME AND CUMULATIVE TAX, INTEREST & PENALTIES

| Tax Year | Return Filed | Gross Income | Total Tax Due† | Tax Paid |
|---|---|---|---|---|
| 1979 | Apr. 3, 1981 | $172,126.00 | $62,875.00 | –0– |
| 1981 | May 9, 1983 | $103,601.00 | $56,495.00 | –0– |
| 1982 | May 27, 1983 | $20,182.00 | $11,574.81 | –0– |
| 1983 | Aug. 13, 1986 | $110,866.00 | $72,128.06 | –0– |
| 1984* | Aug. 15, 1986 | $155,918.00 | $83,508.11 | –0– |

* Debtors' Joint return      † Includes penalties and interest through 1986 (no civil fraud penalty was assessed)

**B. Debtors' Explanation for Failure to Pay Taxes.** In his deposition and at trial, Carl advanced various reasons why he and his wife failed to pay their taxes for the years in question. Carl thought that his April 1982 bankruptcy had discharged his 1979 and 1981 tax debt, since the IRS did not contact him about his continuing tax liability for those years. Carl also testified that in some years his former accountant, Dave Gotch ("Gotch"), became overextended during filing season. He was too busy to prepare Carl's returns on time after receiving all necessary data. Consequently, Gotch prevailed upon Carl's being a "nice guy" to request an extension to submit his return late. Alternately, if Carl did not have the money to pay his taxes, Gotch also filed an extension for him. The Court found Carl to be a credible witness at trial, and accepts this testimony. Carl further testified that he did not have the money to pay timely the 1983 and 1984 taxes because he had invested in failed tax shelters. In a futile attempt at financial planning, Carl committed almost $18,000 to two tax shelters which were subsequently insolvent or disallowed by the IRS.

The Debtors retained a new accountant, Dick Hall ("Hall"), to bring order out of their financial chaos, explaining: "[W]e needed more discipline because our financial affairs were just such a mess and we needed, you know, an accountant that was tougher on us that could straighten us out." Hall accepted the Debtors as his clients on the condition that they go back to their former accountant, have him refigure their 1983 and 1984 tax returns without the investment tax credits, and file the late returns with the IRS. To forestall the Sonnenbergs' tax problems from arising again, Hall assisted the Debtors in forming a personal service corporation, "Compensation and Benefit Plans, Inc.," in September 1985. Commissions from self-employed activities earned in subsequent years were paid to the corporation. Before transmitting any remuneration to the Debtors, Compensation and Benefit Plans, Inc. withheld Social Security taxes and income taxes.

**C. The Debtors' Lifestyle.** Carl, a college graduate, is currently married for the third time; his two previous marriages (May 1968—May 1981 and July 1982—December 1983) ended in divorce. He married his present wife, Jane, formerly a school teacher and now an insurance agent, immediately following his second divorce in December 1983. The Sonnenbergs traveled regularly to vacation destinations both within and outside the United States, including Las Vegas (for gambling). They belonged to a country club and purchased a new car every twelve to eighteen months. Carl was always stylishly dressed.

In February 1985 the Debtors purchased a $341,000 home, making a $50,000 to $60,000 down payment from the sale of Jane's prior marital residence and a $15,000 per-

sonal loan from a friend. Two and one-half years later, the Debtors made a paper profit when they sold the house for $370,000. However, they had to sign a personal note for the $50,681.11 deficiency which remained after paying off the first and second mortgages and the real estate commission. The couple has been renting a suburban apartment for $870 per month since the September 1987 sale.

**D. 1983 and 1984 Tax Returns Were Filed in August 1986.** The Debtors and the IRS disagree over when the Sonnenbergs' 1983 and 1984 income tax returns were actually filed (Carl and Jane filed separate 1983 returns and a joint 1984 return). The Debtors contend without substantiation that the 1983 and 1984 tax returns were filed in March 1986, more than two years prior to petition for relief under Chapter 7 of the Bankruptcy Code in May 1988. When he was deposed in January 1989, Carl said his records showed the returns were filed in March 1986; however, he produced no record to support this assertion.

In contrast, the IRS has submitted a February 10, 1989, "Certificate of Official Record" ("Certificate"), certified under seal by the District Director of Internal Revenue. The Certificate is a data compilation of the Sonnenbergs' tax records under the custody of that office, including interest and penalties assessed, and the filing dates

for the Debtors' 1983 and 1984 tax years (August 13, 1986, and August 15, 1986, respectively). According to Rule 902(4) of the Federal Rules of Evidence, the Certificate is self-authenticating proof that the 1983 and 1984 tax returns were filed in August 1986, and the Court accepts it as such.[1]

This finding resolves the dischargeability of the Sonnenbergs' 1983 and 1984 taxes. Section 523(a)(1)(B)(ii) of the Bankruptcy Code denies relief from any taxes owed on returns filed late and within two years of a debtor's petition in bankruptcy. Since the Debtors filed their 1983 and 1984 tax returns within two years of their May 1988 petition for relief, the taxes for those years are nondischargeable.

## CONCLUSIONS OF LAW

For the Court to deny discharge of the Sonnenbergs' tax debt, the IRS must demonstrate that the Debtors' lavish lifestyle, combined with their failure to set aside funds to pay their taxes, constituted a "willful attempt to evade or defeat" their tax obligations.[2] The standard of proof is a "preponderance of evidence." *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The IRS has produced no case law on point, and the Court has also been unable to find any pertinent authority.[3] The legislative history of this

---

1. Rule 902. Self-Authentication.
   Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

   .　　　.　　　.　　　.

   (4) Certified copies of public records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including *data compilations in any form, certified as correct by the custodian or other person authorized to make the certification*.... (emphasis added)

2. § 523(a)(1)(C) provides:
   § 523. Exceptions to discharge.
   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
   　　(1) for a tax or a customs duty—

   .　　　.　　　.　　　.

   　　(C) with respect to which the debtor made a fraudulent return or *willfully attempted in*

   *any manner to evade or defeat such tax;*
   (emphasis added)

3. The Court does not find helpful *Taylor v. Commissioner*, 44 T.C.M. 393 (1982), the only tax case uncovered in the Court's research on this issue. Taylor, convicted of mail fraud for his mortgage broker activities, accepted funds which were intended to be used as loans for his clients; however, Taylor used the funds for himself. The Tax Court noted that: "If ... [Taylor], in fact, intended to pay the tax, it is reasonable to expect him to have accumulated funds for that purpose." However, when the Tax Court found that the Service had correctly assessed the civil fraud penalty under IRC § 6653(b), it held:

   In light of all the facts here—failure to file for 6 consecutive years, knowledge that he owed taxes, disorganized and incomplete records, feeble and contradictory excuses, no provision for future payment of taxes, unreported income from an illegal activity, and other

Code provision deals with it in summary fashion,[4] and prior bankruptcy legislation also fails to shed any light.[5]

The IRS' theory is that the Debtors had sufficient earnings to pay their accrued income tax liabilities for the years in question, either at the time the taxes were due or in subsequent years. Despite this financial ability, the returns were consistently filed late and without tax payment. Further, the Sonnenbergs made no attempt to save money to pay their outstanding tax liabilities and disbursed significant sums of money on unnecessary items and luxuries. By choosing to spend excessively on personal consumption to the exclusion of paying their income tax liabilities, the Debtors had no reasonable cause or justifiable excuse for not paying their taxes, and thus willfully attempted to evade or defeat them.

The Debtors rebut the IRS' theory, asserting that at all relevant times they intended to pay their taxes, and did in fact file all their returns (even if untimely). Only a lack of sufficient funds due to poor money management and flawed business decisions prevented the Debtors from paying the taxes when due. Further, Carl was under the mistaken belief that the 1979 and 1981 taxes were discharged in his April 1982 bankruptcy. His impression, although erroneous, was formed in good faith.

The Court concludes that the IRS has failed to meet its burden of proof to show the Debtors' willful attempt to evade paying their taxes for each of the tax years in question. The Sonnenbergs (and especially Carl) were involved in a series of financial disasters which made ever-increasing demands on their rapidly diminishing assets. The events included Carl's three marriages and two divorces within eighteen months; nearly $18,000 invested in two failed tax shelters and the consequent loss of anticipated investment credits; and the ill-advised and heavily-leveraged purchase of a $341,000 home and subsequent $50,681.11 deficiency when it was sold thirty months later. Experiencing these circumstances in quick succession gave the Debtors little opportunity to regroup and sort out their financial affairs. In attempting to work through these difficulties, they acted with no particular intent to defeat any specific creditor, including the IRS. The Sonnenbergs' downward financial spiral, combined with the maintenance of a lifestyle inconsistent with their financial obligations, finally resulted in the bankruptcy petition which brings them before this Court.

---

actions (such as opening and closing numerous bank accounts as detailed in our findings and writing many checks to cash)—combine to convince us that petitioner knowingly engaged in a practice intended to conceal his income from the government and to evade taxes known to be due.

*Id.* at 397.

Thus, Taylor's failure to save money to pay his taxes played a small part in the Court's finding that he evaded his taxes. The circumstances in the case at bar are quite different, and this Court thus does not find *Taylor* controlling.

**4.** The first congressional report notes briefly on the issue of nondischargeability: "Tax claims with respect to which the debtor filed a fraudulent return, entry or invoice, or fraudulently attempted to evade or defeat any tax (§ 523(a)(1)(C)) are included. The date of the taxable year with regard to which the fraud occurred is immaterial." Senate Judiciary Committee, S.Rep. No. 989, 95th Cong., 2d Sess. 78, *reprinted in* 1978 U.S.Code Cong. & Admin.Rep., 5787, 5864. That report also summarized: "In general, tax claims which are nondischargeable, despite a lack of priority, are those to whose staleness the debtor contributed by some wrongdoing or serious fault as, for example, taxes with respect to which the debtor filed a fraudulent return." *Id.* at 14, 1978 U.S.Code Cong. & Admin.Rep. at 5800.

The second congressional report briefly comments that: "[T]axes with respect to which the debtor made a fraudulent return or willfully attempted to evade or defeat...." are nondischargeable. House Judiciary Committee, H.Rep. No. 595, 95th Cong., 2d Sess. 363, *reprinted in* 1978 U.S.Code Cong. & Admin.Rep. 5963, 6319.

**5.** Section 523(a)(1)(C)'s nondischargeability provision is virtually identical to § 17a(1)(d) of the Bankruptcy Act of 1898, Act of July 1, 1898, 30 Stat. 544, as amended, excepting taxes from discharge "with respect to which the bankrupt made a false or fraudulent return, *or willfully attempted in any manner to evade or defeat.*" (emphasis added). *See* 3 *Collier on Bankruptcy* (Lawrence King, 15th ed. 1979 and Supp.1992) ¶ 523.06[4], 523–26; 1A *Collier on Bankruptcy* (Lawrence King, 14th ed. 1943 and Supp.1978) § 17[5], 1622.

## CONCLUSION

The Debtors' adversary complaint is sustained in part and denied in part. Their 1979, 1981 and 1982 taxes are discharged under Section 727 of the Bankruptcy Code. However, pursuant to Section 523(a)(1)(B)(ii), the 1983 and 1984 taxes are not discharged since the tax returns for those years were late-filed in August 1986, which fell within two years of the Debtors' May 1988 bankruptcy filing. A separate order will be entered in accordance with this opinion.

## ORDER

This cause coming on for trial on the Debtors' complaint to determine the dischargeability of income tax obligations which they owe individually or jointly for the taxable years 1979 and 1981 through 1984, and the Court having heard the arguments of the parties and considered the testimony taken, evidence received, and briefs submitted by counsel for the parties,

IT IS HEREBY ORDERED, for the reasons stated in the accompanying Memorandum of Decision, that the Debtors' complaint is granted in part and denied in part. The Debtors' 1979, 1981 and 1982 taxes are discharged under Section 727 of the Bankruptcy Code; their 1983 and 1984 taxes are excepted from discharge pursuant to Section 523(a)(1)(B)(ii).