**In re Jeffrey Bernard McDONALD, Debtor.**

**Jeffrey Bernard McDonald, Plaintiff,**

**v.**

**United States of America, Defendant.**

**Bankruptcy No. 96–48967–293.
Adversary No. 97–4121–293.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Dec. 2, 1999.

Charles W. Riske, Clayton, MO, for Debtor/Plaintiff.

Martin M. Shoemaker, Trial Attorney, Tax Division, U.S. Justice Department, Washington, DC, for Defendant.

### MEMORANDUM OPINION

DAVID P. McDONALD, Chief Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151 and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I), § 523(a)(1) of Title 11 and Bankruptcy Rule 4007(a), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

1. On October 24, 1996, Debtor, Jeffrey Bernard McDonald, filed a voluntary petition with this Court seeking relief under Chapter 7 of the Bankruptcy Code.

2. This Court entered its order of discharge of Debtor on February 10, 1997.

3. On May 27, 1997, Debtor initiated this adversary proceeding by filing a complaint to determine dischargeability of certain federal income tax liabilities for the years 1988 through 1994, inclusive. Debtor claims that his federal income tax liabilities pertaining to the years 1988 through 1992, inclusive, are dischargeable under the Code because they relate to taxes which were due more than three years prior to the date of the bankruptcy petition and for which returns were filed more than two years before the date of the filing of the bankruptcy petition. *See* 11 U.S.C. §§ 507(a)(8)(A)(i), 523(a)(1)(A) and 523(a)(1)(B)(ii).

4. On July 7, 1997, the United States filed an answer claiming that Debtor's federal income tax liabilities for the years 1988 through 1992, inclusive, are nondischargeable under the Code because Debtor willfully attempted to evade or defeat such taxes. *See* 11 U.S.C. § 523(a)(1)(C).

## *JOINT STIPULATION OF FACTS*

The parties stipulated to the following facts as true:

1. Debtor earned a Bachelor of Science degree in Business Administration from Kentucky State University in 1970. He then served in the Marine Corp. Thereafter, he received a Masters in Business Administration from Boston University in 1974.

2. In 1974, Debtor began a twelve-year employment with Monsanto Corporation. Initially, he worked in the accounting department. He was promoted to Senior Commercial Accountant and became supervisor of internal audit, and eventually, manager of credit.

3. In 1987, Debtor began working as Manager of Financial Services for Protein Technologies International, Inc. ("PTI"), a subsidiary of Ralston Purina. Debtor is currently PTI's Director of Financial Services in charge of cash and accounts receivable on a global basis. His position requires him to travel internationally.

4. Federal income tax liabilities for the years 1988 through 1992, inclusive, represent Debtor's personal income taxes for periods for which tax returns have been filed and for which the due dates of the returns were each more than three years preceding the filing of Debtor's bankruptcy petition.

5. Federal income tax liabilities for the years 1988 through 1992, inclusive, were assessed more than 240 days prior to the filing of Debtor's bankruptcy petition.

6. On or about August 10, 1994, Debtor filed federal income tax returns for the years 1988 through 1992, inclusive, in which Debtor filed as a married individual filing a separate return. The returns were filed more than two years prior to Debtor's bankruptcy petition.

7. Federal income taxes due as shown on Debtor's federal income tax returns for the years 1988 through 1992, inclusive, included the following: $2,657.00 (1988), $9,197.00 (1989), $6,317.00 (1990), $5,825.00 (1991) and $11,299.00 (1992).

8. The following information was included on Debtor's Forms W–2 wage and tax statements for the applicable tax years:

| Year | Wages, tips & compensation | Social security wages | Federal income tax withheld |
|---|---|---|---|
| 1988 | $50,600.88 | $45,000.00 | $3,044.70 |
| 1989 | 54,522.20 | 48,000.00 | 4,038.39 |
| 1990 | 57,860.96 | 51,300.00 | 6,577.44 |
| 1991 | 61,228.80 | 53,400.00 | 5,736.19 |
| 1992 | 62,190.80 | 55,500.00 | 5,141.44 |

9. Exemptions as shown on Debtor's Form W–4,[1] the Employee's Withholding Allowance Certificate, contained in PTI's payroll and personnel records for the

---

**1.** As the government indicates, Form W–4 is the mechanism by which an employee provides relevant information sufficient to estimate the portion of the employee's federal income tax liability to be withheld from the employee's wages. By changing the number of exemptions claimed, an employee can increase or decrease the amount of taxes withheld from the employee's wages as a means of estimating actual annual federal income taxes. *See* 26 U.S.C. § 3402, et seq.

years 1988 through 1992, inclusive, included the following: fourteen (1988 through November 1989), one (December 1989 through March 1990) and ten (April 1990 through 1992). Debtor claimed eight exemptions on the most recent Form W–4, submitted October 15, 1992.

10. Debtor has been married with one dependent child since 1972.

11. Debtor's federal income tax liabilities for the years 1993 and 1994 are non-dischargeable under the Bankruptcy Code.

12. Penalties and interest assessed on Debtor's federal income tax liabilities for the years 1988 through 1992, inclusive, are dischargeable under the Bankruptcy Code.

*FACTUAL BACKGROUND*

Upon consideration of the testimony, evidence and argument of counsel, the Court accepts and adopts those facts set forth in the above Joint Stipulation of Facts along with the following findings as the Court's findings of fact:

1. Debtor testified:

a. He became a homeowner in 1980 when he and his wife purchased a home in Charlotte, North Carolina. In 1980, he and his wife claimed certain itemized deductions on their federal income tax return, including interest and property taxes on their home.

b. Subsequent to joining PTI in 1987, he and his wife purchased a home at 14526 Greencastle in Chesterfield, Missouri. Two mortgages presently exist on this home including one in favor of the estate of his father, Nathan McDonald, Jr. As a result of this purchase, Debtor thought he would receive additional tax benefits through increased deductions for home loan interest and property tax payments.

c. From the time he and his wife were married in 1971 and through 1986, the couple had always filed their federal income tax return after the requisite filing date, April 15, typically in May or June of the same year. The couple generally had received refunds from the United States for excess federal income tax withholdings, and, historically, they had used those refunds to finance family vacations or holiday gifts.

d. At or about the time he began working at PTI, his wife had the couple's third stillborn child, after which time she became depressed, and the couple separated. As a result, he was required to assume certain responsibilities including care for his dependent son and various household duties which had previously been performed by his wife.

e. As part of his position as Manager of Financial Services at PTI, he assumed responsibilities for PTI's worldwide currency management, requiring him to travel globally and to adapt to cultural differences and language barriers.

f. He did not file federal income tax returns for the years 1988 through 1992, inclusive, when due because he believed he would receive a tax refund for those years as he and his wife previously had received.

g. The United States began garnishing his wages in August 1993 for taxes owed as determined by substitute tax forms completed by the Internal Revenue Service ("IRS"). He believed the substitute tax forms, which had computed his federal income tax liability as if he had filed as a married individual filing a joint return with only one exemption, were incorrect given his current personal situation (i.e., that he intended to file as a married individual filing a separate return and that he had additional deductions for interest, tax and medical expenses.)

h. In August 1994, when he filed his federal income tax returns for the years 1988 through 1992, he did not include any payments for taxes owed, but included a letter instructing the IRS to contact him regarding payment as he did not have the ability to pay the full amount due.

i. During the period 1988 through November 1989, he claimed fourteen exemptions on his Form W–4. He computed the number of exemptions as one exemption each for him and his wife, one exemption each for his stillborn son and his dependent son, and ten exemptions as an estimate of itemized deductions for interest and property taxes for the couple's home and certain medical expenses to be included on the couple's federal income tax return.

j. In December 1989, the number of exemptions on his Form W–4 was reduced to one at the direction of the IRS. In April 1990, the number of exemptions was increased to ten as jointly determined by the Debtor and the IRS.

k. At the time of his bankruptcy petition, Debtor's Form W–4 reflects eight exemptions as directed by his tax attorney.

2. An agent for the IRS testified:

a. The IRS has no record of Debtor's federal income tax return for the year 1987.

b. There is nothing in Debtor's IRS tax file indicating that the IRS agreed to increase the number of exemptions included on Debtor's Form W–4 to ten in April 1990.

3. The IRS sent a proposed individual income tax assessment for the tax year 1988 addressed to the Debtor at 2842 Bulls Avenue, Tuskegee Institute, Alabama 36088–2904 on November 21, 1991.[2]

## DISCUSSION

■ Debtor seeks to ascertain the dischargeability of certain federal income taxes. Specifically, Debtor claims that his federal income tax obligations for the years 1988 through 1992, inclusive, were not provided priority under section 507 of the Code. Consequently, Debtor argues that, through the operation of section 727 of the Code, those federal income tax liabilities have been discharged. The government, however, claims that Debtor's federal income tax obligations should be excepted from discharge under 11 U.S.C. § 523(a)(1)(C). That section of the Code provides "[a] discharge under section 727 ... does not discharge an individual debtor from any debt ... with respect to which the debtor ... willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). The sole issue in this case, therefore, is whether Debtor "willfully attempted in any manner to evade or defeat" his federal income tax liabilities. In determining nondischargeability, the burden is on the government to prove, by a preponderance of the evidence, that Debtor "willfully attempted in any manner to evade or defeat the tax." *Grogan v. Garner*, 498 U.S. 279, 281, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ The Code does not explicitly define the terms "willfully" or "in any manner" as used in section 523(a)(1)(C). Consequently, other courts, in determining the meaning of these terms, have examined usage of those terms in the Internal Revenue Code ("I.R.C."). Section 7201 of the I.R.C., for example, provides "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed ... shall be guilty of a felony ..." 26 U.S.C. § 7201. The Supreme Court has indicated that willfulness, as used in section 7201 of the I.R.C., requires proof of "a bad purpose" or "an evil motive." *Cheek v. United States*, 498 U.S. 192, 196, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991); *United States v. Murdock*, 290 U.S. 389, 395, 54 S.Ct. 223, 78 L.Ed. 381 (1933); *Spies v. United States*, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943); *United States v. Bishop*, 412 U.S. 346, 360, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973). Nevertheless, the Court limited its interpretation of willfulness to criminal cases.

**2.** Although no evidence was presented regarding the IRS's reasons for sending the proposed assessment to this address, the IRS agent testified that a taxpayer's address is generally updated only when notified by the taxpayer of the change or when the IRS receives a tax return with an address different than that contained in the taxpayer's file.

498 U.S., at 200, 111 S.Ct. 604. In civil contexts, on the other hand, courts have generally found willfulness to mean "a voluntary, conscious and intentional violation of a known legal duty." *In re Ketchum,* 177 B.R. 628, 630 (E.D.Mo.1995); *In re Toti,* 24 F.3d 806, 809 (6th Cir.1994), cert. denied, 513 U.S. 987, 115 S.Ct. 482, 130 L.Ed.2d 395; *Smith v. United States,* 202 B.R. 277, 279 (S.D.Ind.1996). Consequently, section 523(a)(1)(C) does not require a debtor to have committed the purported act with a bad purpose or an evil intent, but merely to have voluntarily, consciously and intentionally committed such an act. 202 B.R., at 279.

In determining whether a debtor has voluntarily, consciously and intentionally violated a known legal duty sufficient to find willfulness under section 523(a)(1)(C) of the Code, courts have sought objective indicia of consciousness on the part of the debtor. The government relies on a line of cases[3] attempting to demonstrate types of behavior that have previously been determined to constitute willfulness under section 523(a)(1)(C). However, in each of these cases, the debtor pled guilty to, or was found guilty of, various tax laws for willfully failing to file tax returns or to pay taxes. In this case, however, no such criminal intent or conduct existed. The conduct of the debtors involved in the cases cited by the government was much more egregious than the conduct of Debtor in the present case. Consequently, the factual background of this case can be readily distinguished from the facts of those cases cited as obvious examples of willfulness.

In addition to the cases discussed above, the government relies, more persuasively, on this Court's decision in *In re Ketchum,* 177 B.R., at 628. In *In re Ketchum,* this Court concluded that "filing [ ] false W–4 withholding statements along with a corresponding failure to file a tax return or pay one's federal tax liability" may sufficiently evidence a debtor's willfulness to preclude dischargeability under section 523(a)(1)(C). 177 B.R., at 630 (relying on *Gilder v. United States,* 122 B.R. 593 (Bankr.M.D.Fla. 1990) and *Fernandez v. I.R.S.,* 112 B.R. 888 (Bankr.N.D.Ohio 1990)). This court also found, however, that Ketchum filed "false" Form W–4's so that his employers would withhold no amounts from his wages. 177 B.R., at 630. That fact, coupled with Ketchum's failure to file a federal income tax return for several years, compelled the court to find that he acted willfully, and, therefore, that his outstanding federal income tax obligations were nondischargeable under section 523(a)(1)(C).

■ The instance case, nevertheless, is distinguishable from *In re Ketchum* because the debtor in *In re Ketchum* admitted completing "false" Form W–4's to preclude his employer from withholding any money whatsoever from his wages. As Debtor contends, however, section 3402(m) of the I.R.C. allows taxpayers to claim excess exemptions for approximations of certain items purportedly deductible on federal income tax returns as itemized deductions. The impropriety of Debtor's exemptions, as Debtor argues in this case, was merely a consequence of bad estimates made as to the potential amount of itemized deductions available. As Debtor testified, he and his wife anticipated, as a result of their recent home purchase and various medical expenses, receiving additional itemized deductions on their federal income tax returns. Because of these changes in circumstances, Debtor increased his estimations of available deductions and, therefore, increased the number of exemptions on his Form W–4's accordingly. In *In re Ketchum,* the debtor's false Form W–4's, effectively eliminating withholdings from his wages, were used as objective indicia that Ketchum acted "voluntarily, consciously and intentionally." Form W–4's filed for the purpose of eliminating or significantly reducing the

---

**3.** *In re Fegeley,* 118 F.3d 979, 984 (3d Cir. 1997); *In re Birkenstock,* 87 F.3d 947, 951 (7th Cir.1996); *In re Bruner,* 55 F.3d 195, 200 (5th Cir.1995); *In re Haas,* 48 F.3d 1153 (11th Cir.1995); *In re Toti,* 24 F.3d 806, 809 (6th Cir.1994).

amount of taxes regularly withheld from a debtor's wages coupled with the failure to file a tax return or to make any effort to pay taxes due suggests willfulness on the part of the debtor. 177 B.R., at 631.

■ Here, however, Debtor's acts did not rise to the level of willfulness found on the part of the debtor in *In re Ketchum*. The government has not offered sufficient evidence suggesting Debtor's Form W–4's were completed falsely rather than just ignorantly. Nothing indicates that Debtor's mistakes were not the result of mere miscalculations of his estimated available itemized deductions. Moreover, as Debtor testified, he and his wife had previously not filed their tax returns on time, but because they regularly received refunds, waited until the financial need for the refund arose. Debtor testified that all the changes in his personal life suggested to him an increase in the amount of available itemized deductions. Therefore, Debtor, however naive it may seem, believed he would continue to receive refunds from the IRS and elected not to claim those refunds until the financial need was presented. Unlike Ketchum, who avoided the payment of taxes through the combined effect of falsifying his Form W–4's and failing to file a federal income tax return, Debtor paid taxes ranging from $3,044.70 in 1988 to $6,577.44 in 1990. Although these amounts are relatively minimal compared to Debtor's annual wages, which ranged from $50,600.88 in 1998 to $62,190.80 in 1992, Debtor's conduct cannot be held to constitute willful "avoidance" or "evasion" akin to the conduct of the debtor in *In re Ketchum*. Furthermore, although he did not include any payments for taxes owed, Debtor, unlike Ketchum, filed his federal income tax returns (admittedly late, Debtor filed returns for the years 1988 through 1992 in August 1994). Additionally, Debtor included a letter instructing the IRS to contact him regarding payment as he did not have the ability to pay the full amount

due. Acknowledgment that taxes were owed and attempts to make arrangements for the payment of those taxes on the part of Debtor do not seem characteristic of a taxpayer wilfully attempting to evade or avoid the payment of taxes.

Because the government failed to demonstrate by a preponderance of the evidence that Debtor voluntarily, consciously, and intentionally violated a known legal duty, it has not proven that Debtor acted wilfully for purposes of section 523(a)(1)(C) of the Code. Because it has not been found that Debtor acted wilfully, Code section 523(a)(1)(C)'s exception to discharge is not applicable in this case. Consequently, Debtor's income tax obligations for the years 1988 through 1992, inclusive are properly dischargeable under section 727 of the Code.[4]

An Order consistent with this Memorandum Opinion will be entered this date.

---

4. The parties stipulated that Debtor's federal income tax liabilities for the years 1993 and 1994 are nondischargeable under the Code. Additionally, penalties and interest assessed on Debtor's federal income tax liabilities for the years 1988 through 1992, inclusive, are dischargeable under the Code.