RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0077P (6th Cir.)
File Name: 04a0077p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

In re: GARY LOUIS GARDNER,
        *Debtor.*

———————————

JEFFREY D. STAMPER,
Executor of the Estate of Gary
Louis Gardner,
        *Appellant,*

*v.*

UNITED STATES OF AMERICA,
        *Appellee.*

No. 02-5523

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 01-00514—John G. Heyburn II, Chief District Judge;
David T. Stosberg, Bankruptcy Judge.

Argued: September 16, 2003

Decided and Filed: March 12, 2004

Before: BOGGS, Chief Judge; KRUPANSKY and CLAY,
Circuit Judges.

———————————

## COUNSEL

**ARGUED:** David M. Cantor, SEILLER & HANDMAKER, Louisville, Kentucky, for Appellant. Marion E.M. Erickson, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** David M. Cantor, C. Shawn Fox, SEILLER & HANDMAKER, Louisville, Kentucky, for Appellant. Marion E.M. Erickson, Edward T. Perelmuter, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

———————————

## OPINION

———————————

KRUPANSKY, Circuit Judge. This proceeding seeks to decide if appellant-debtor Gary Gardner ("Gardner") may discharge his income tax liability for the years 1990 and 1991 pursuant to 11 U.S.C. § 523(a)(1)(C) of the Bankruptcy Code ("Code"). The appellant has challenged the district court's affirmance of the bankruptcy court's determination that his conduct constituted a willful attempt to evade his tax liability, thus precluding discharge in a Chapter 7 liquidation. On appeal, Gardner, and now his estate,[1] has urged this court to conclude that Section 523(a)(1)(C) of the Code does not apply to attempts to willfully evade or defeat the payment of taxes, thereby allowing his estate to discharge his tax liability in bankruptcy. For the reasons indicated below, this court affirms the district court's conclusion that the bankruptcy

———————————

[1]After the filing of briefs before this court, Gardner died. Pursuant to Rule 45(a), Rules of the Sixth Circuit, the office of the Circuit Clerk granted a motion for substitution of Jeffrey D. Stamper, Executor of the Estate of Gary Louis Gardner for debtor by Order of May 29, 2003. That substitution did not alter the terms of the dispute.

court did not err in refusing to discharge Gardner's tax liability.

The United States instituted an adversary proceeding against Gardner in the bankruptcy court by filing a complaint seeking a determination that his unpaid tax liabilities for 1990 and 1991 were excepted from discharge in bankruptcy under § 523(a)(1)(C) of the Code. The bankruptcy court determined the liabilities were excepted from discharge under that provision because appellant had willfully attempted to evade or defeat those liabilities. On appeal, the district court affirmed the bankruptcy court's determination.

During the relevant period, appellant worked as a personal injury attorney. He was a partner in the law firm of Gardner, Ewing & Souza. On August 19, 1991, Gardner filed his 1990 federal income tax return showing an unpaid tax liability of $90,989. After appellant failed to satisfy that liability, Revenue Officer Keith Thomas contacted debtor to make demand for payment. Thomas informed Gardner that if he did not pay the liability, the Internal Revenue Service ("IRS") would commence collection efforts and on April 27, 1992, Thomas caused a federal tax lien to be filed against debtor.

On June 2, 1992, Gardner, his accountant, and Thomas met to discuss debtor's tax delinquencies. The discussion addressed the debtor's unpaid tax liabilities for 1990 and 1991. At the meeting, Gardner informed Thomas that his 1991 tax return would be filed showing a tax liability of approximately $101,000. Gardner assured Thomas he was working on several cases that could settle within the following months for which his personal fees would be sufficient to satisfy the tax obligations.

Thomas requested that Gardner provide him with certain financial information, noting that failure to provide the requested information would result in levies on appellant's bank accounts and seizure of his partnership interest. Gardner provided the requested financial information, which included

a required Collection Information Statement ("CIS") and an analysis of his pending cases. Gardner's CIS listed only two bank accounts: First National Bank with a balance of $26.24; and Pennyrile Bank with a balance of $7.75.

Gardner and Thomas met twice in July, and on September 28, 1992, appellant submitted an offer to compromise his tax liabilities for $21,539. Thomas recommended the compromise offer to the IRS personnel responsible for processing offers in compromise, indicating that he believed the amount offered represented the maximum amount likely to be collected through normal collection procedures. The IRS rejected the offer in May 1993.

Along with the offer in compromise, appellant submitted an updated CIS listing the same two bank accounts detailed on his prior statement, except now one bank account reflected a zero balance and the other disclosed that it was overdrawn. Significantly, Gardner did not list a nominee account, in the name of his secretary and her husband. Gardner used this account for his personal banking needs, depositing $90,000 between August 31 and September 10, 1992.[2]

In May 1993, Gardner received a $500,000 distribution from his law firm attributable to the settlement of a case (the Victor Robinson case). The appellant did not inform Thomas about the settlement nor apply any portion of the funds to his 1990 or 1991 tax liabilities. Gardner did, however, use $209,000 of the distribution to make an estimated federal tax payment for 1993, and used another part (as much as $60,000) to pay State tax obligations.

On October 7, 1993, Gardner again submitted to the IRS an offer to compromise his tax liabilities, this time for $100,000.

---

[2] Gardner began using this account in March 1992 and stopped using the account sometime in 1993 when he began using a client escrow account at his law firm for his personal banking needs.

Appellant accompanied the offer with an updated CIS form, which failed to list an escrow account at Gardner's law firm that debtor used for his personal banking needs. Between December 1993 and May 1995, Gardner deposited more than $115,000 into that account. In early 1995 the IRS rejected Gardner's second compromise offer.

Shortly after the IRS rejected Gardner's second compromise offer, Thomas mailed appellant a final notice of intent to levy against real and personal property unless the appellant paid the full amount of his past-due tax liabilities within 30 days. The levy notice listed Gardner's total liability, including penalties and interest, as $343,467.33.

On April 14, 1995, Gardner and his accountant met with Thomas to discuss satisfying his tax obligations. Gardner assured Thomas that his law firm expected to receive a fee in the near future from the settlement of a case (the Cordis case), and that appellant's share of that fee would satisfy his tax liabilities. Gardner advised Thomas to issue a levy on the law firm to collect debtor's share of the fee at the appropriate time. On October 10, 1995, Gardner's accountant advised Thomas to serve the levy which instructed the firm to pay over all property of the appellant, being held by the firm, up to the total amount of tax due. The managing partner of the firm responded to the levy by mailing Thomas a check for $2,707.13, along with a letter stating that the check represented the sum total of "personal funds" due Gardner from the law firm's accounts.[3]

Subsequent to the IRS levy, Gardner's firm received its fee from the Cordis case on December 6, 1995, forwarding none of the appellant's share of the $170,000 fee to the IRS, and instead distributing the fee to appellant in January 1996. In

[3]In a telephone conversation, the managing partner advised Thomas that he would cooperate with the levy, and would send Thomas all money due to appellant including the money from the Cordis settlement, which he expected would be paid to the law firm by November 15, 1995.

response, Gardner deposited $36,000 in another nominee account maintained in his wife's former married name and made a $25,073 contribution to his retirement plan.

On October 30, 1995, soon after the IRS served the levy on his law firm, Gardner filed a petition for relief under Chapter 7 of the Bankruptcy Code. Gardner did not list any cash on hand or bank accounts and he did not list the Cordis case on a list of pending cases at his law firm that he submitted to the trustee. Gardner's bankruptcy case closed on September 23, 1998.

On March 12, 1999, the United States sought to reopen the appellant's bankruptcy proceeding, which the court granted. On May 5, 1999 the government instituted an adversary proceeding against Gardner by filing a Complaint to Determine Dischargeability of his federal income tax liabilities.

The bankruptcy court conducted a trial on the complaint that featured testimony by appellant, his accountant, and IRS officials involved in the case. At the trial, Gardner admitted that he used nominee accounts to hide his assets from the State of Kentucky. Debtor also testified that he was aware of his obligation to pay his 1990 and 1991 federal income taxes, and that he could have used some of the income he earned between 1990 and 1996 to pay those taxes.

Keith Thomas testified that he did not become aware of debtor's nominee accounts until December 1999, when Gardner provided a deposition in connection with the instant litigation. Thomas also testified that he would not have considered debtor's original offer in compromise to be *bona fide* had he known, at the time, that debtor had deposited $90,000 in the nominee account belonging to Gardner's secretary and her husband shortly before submitting his first compromise offer. Additionally, John Brandon, the IRS Offer Specialist responsible for evaluating debtor's second offer in compromise, testified that he did not know about

Gardner's use of the nominee account belonging to his secretary at the time he evaluated the offer. Brandon testified that he learned of nominee accounts at Gardner's law firm (the former escrow account) and Gardner's accountant's firm while considering the offer in compromise, but had been unable to obtain any information about those accounts even after requesting such information.

The United States submitted evidence concerning Gardner's profligate lifestyle after he incurred the tax liabilities for 1990 and 1991. That lifestyle included numerous golfing junkets throughout the United States, vacations to Europe and the Caribbean and the yearly expenditure of over $25,000 to maintain his country club memberships.

The bankruptcy court determined that the United States had met its burden of proving that Gardner had willfully attempted to evade his tax liabilities within the meaning of Section 523(a)(1)(C). The court pointed to evidence of Gardner's "lavish" lifestyle, his concealed nominee accounts and concluded that appellant had the ability to pay the taxes. The court also observed that Gardner had "dishonored the 'tacit agreement' with Thomas to pay the taxes in full with the proceeds of a large settlement." On appeal, the district court affirmed, concluding that "reasonable and fair inferences from the evidence" supported the bankruptcy court's determination. Gardner made this timely appeal pursuant to 28 U.S.C. § 158.

On appeal from a bankruptcy court, a district court applies the clearly erroneous standard of review to findings of fact, and reviews questions of law *de novo*. On appeal of a bankruptcy decision from a district court, this court employs the same standards, evaluating the bankruptcy court's decision directly, without being bound by the district court's legal determinations. *In re M.J. Waterman & Associates, Inc.,* 227 F.3d 604, 607 (6th Cir. 2000); *In re Lawrence S. Charfoos,* 979 F.2d 390, 392 (6th Cir. 1992).

Pursuant to Chapter 7 of the Bankruptcy Code, a debtor is generally granted discharge from debts that arose prior to the filing of the bankruptcy petition. *See* 11 U.S.C. § 727(b). However, that general rule faces various exceptions set forth in Section 523 of the Code. Pertinent to the instant action, Section 523(a)(1)(C) provides:

> (a) a discharge under § 727, . . . of this title does not discharge an individual debtor from any debt--
> (1) for a tax or customs duty--
> (c) with respect to which the debtor made a fraudulent return or wilfully attempted in any manner to evade or defeat such tax.

11 U.S.C. § 523(a)(1)(C). That exception serves to limit the Bankruptcy Code's discharge of tax debts to the honest but unfortunate debtor. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).

The Sixth Circuit has interpreted the Code's phrase "wilfully attempted in any manner to evade or defeat such tax" as requiring a voluntary, conscious, and intentional evasion. *In re Toti*, 24 F.3d 806, 809 (6th Cir.), *cert. denied*, 513 U.S. 987 (1994). This court's opinion in *Toti* cast a wide net, concluding that § 523(a)(1)(C) included attempts to thwart payment of taxes. *See United States v. Sumpter*, 64 F.3d 663, 1995 WL 501947 at *3 (6th Cir. Aug. 22, 1995) (unpublished) (noting that the "unambiguous language of the statute" encompasses attempts to thwart taxes). Thus, *Toti* clarified that § 523(a)(1)(C) covered both acts of omission, such as failure to file returns and failure to pay taxes, and acts of commission, such as affirmative acts of evasion. *Toti*, 24 F.3d at 809. Moreover, while nonpayment alone is insufficient to bar discharge of a tax obligation, a "knowing and deliberate" nonpayment provides the basis for determining that the tax debt is non-dischargeable. *See In re Birkenstock*, 87 F.3d 947, 952 (7th Cir. 1996).

The government must prove by a preponderance of the evidence that the debtor willfully attempted to evade the tax liability. Section 523(a)(1)(C) renders a tax debt non-dischargeable where the debtor willfully attempted to evade or defeat *payment* of the taxes, even though the debtor, as in the instant case, did not attempt to defeat the *assessment* of the taxes. *In re Griffith*, 206 F.3d 1389, 1396-97 (11th Cir. 2000).

The case law has divided the analysis into two segments– a conduct requirement and a mental state requirement. *United States. v. Fretz (In re Fretz)*, 244 F.3d 1323, 1327-29 (11th Cir. 2001). The government satisfies the conduct requirement when it proves the debtor engaged in affirmative acts to avoid payment or collection of the taxes. Placing assets in the name of others, as Gardner did in this case by using nominee accounts for depositing large sums of his income, amounts to an affirmative act of tax evasion. *See United States v. McGill* 964 F.2d 222, 230 (3d Cir. 1992). Under the mental state requirement, the government must prove the debtor voluntarily, consciously, and knowingly evaded payment. *Toti*, 24 F.3d 809. The mental state requirement is proven when the debtor:

(1)  had a duty to pay taxes;
(2)  knew he had such a duty; and
(3)  voluntarily and intentionally violated that duty

*Fretz*, 244 F.3d at 1330.

The bankruptcy court concluded that the government had proved Gardner's intent to evade payment of the taxes by proving (1) that the debtor lived lavishly during the period of time the IRS sought to collect the tax liability, (2) that Gardner used nominee bank accounts to conceal from the IRS large deposits of income not reflected on the required financial statements, and (3) that the appellant had the ability to pay the taxes.

On appeal, Gardner has argued that this court should decline to follow its own precedent enunciated in *In re Toti.* Gardner has urged this court to find *Toti* inapplicable because it involved an attempt to defeat the assessment of a tax and not an attempt to defeat the payment of a tax. Instead, Gardner has suggested adopting the reasoning of *In re Haas*, 48 F.3d 1153 (11th Cir. 1995), concluding that § 523(a)(1)(C) does not apply to attempts to evade or defeat the payment of taxes only their assessment.

Gardner's argument fails for several reasons. First, the court in *Toti* refused to distinguish between the payment and assessment of a tax liability for purposes of discharge under § 523(a)(1)(C), stating that "[t]he district court correctly held that failure to file a tax return and failure to pay a tax fall within the definition in § 523(a)(1)(C) of a willful attempt to evade or defeat a tax liability." *Toti,* 24 F.3d at 809. Second, this court is bound by the published opinion in *Toti. See United States v. Roper*, 266 F.3d 526, 530 (6th Cir. 2001). Third, *Haas* simply no longer reflects the applicable law in the Eleventh Circuit, having been overruled by a unanimous *en banc* opinion of the Eleventh Circuit. *In re Griffith*, 206 F.3d 1389, 1392 (11th Cir. 2000).[4]

Moreover, Gardner's reliance on *In re Sonnenberg*, 148 B.R. 35 (N.D. Ill. 1992), and *In re McDonald*, 249 B.R. 312 (E.D. Mo. 1999), is misplaced. In those two cases the bankruptcy courts held that the government failed to meet its burden of proving the debtors had willfully attempted to evade or defeat payment of their taxes. Unlike appellant's conduct in the instant case, neither Sonnenberg nor McDonald

---

[4]Moreover, five other Circuits have rejected *Haas's* narrow interpretation that § 523(a)(1)(C) of the Code does not encompass attempts to evade or defeat the payment of taxes. *See Griffith*, 206 F.3d at 1393. citing *In re Fegeley*, 118 F.3d 979, 983 (3d Cir.1997); *In re Birkenstock*, 87 F.3d 947, 951-52 (7th Cir.1996); *Dalton v. IRS*, 77 F.3d 1297, 1301 (10th Cir.1996); *In re Tudisco*, 183 F.3d 133, 137 (2d Cir.1999); *In re Bruner*, 55 F.3d 195, 200 (5th Cir.1995).

engaged in acts to prevent collection of their unpaid taxes, such as the use of nominee accounts, or the intentional fabrication of financial information submitted to the IRS. *Sonnenberg*, 148 B.R. at 38; *McDonald*, 249 B.R. at 318. Accordingly, those decisions do not undermine the bankruptcy court's factual determination, in the instant case, that Gardner had willfully attempted to evade or defeat payment of his tax liabilities.

The evidence in the record supports the bankruptcy court's determination that Gardner attempted to evade or defeat payment of his tax liabilities. The debtor concealed assets from the IRS by using several nominee accounts and by failing to disclose his use of those accounts in a prompt manner to agency officials. *See In re Birkenstock*, 87 F.3d at 951 ("where nonpayment is coupled with . . . measures to conceal assets from the IRS . . . a court may reasonably find that the debtor sought to 'evade or defeat' his tax liabilities"); *Dalton v. IRS*, 77 F.3d 1297, 1302 (10th Cir. 1996). *See also United States v. McGill*, 964 F.3d 222, 230 (3d Cir. 1992) (finding that nominee accounts are well known devices to shield assets from the tax authorities). In the instant case, appellant used a checking account belonging to his secretary and her husband into which he deposited approximately $90,000 during August and September 1992. Gardner also used a client escrow account at his law firm into which he deposited more than $200,000 between December 1993 and October 1995. Debtor additionally used an account set up by his accountant in 1993. Finally, in 1995 and 1996 Gardner used an account in his wife's former married name into which he deposited more than $100,000.

On appeal, Gardner has asserted that the United States should be equitably estopped from challenging the dischargeability of his 1990 and 1991 tax liabilities. This argument lacks merit. First, the Supreme Court has left open the question of whether equitable estoppel may ever lie against the government. *Office of Personnel Management v. Richmond*, 496 U.S. 414, 419 (1992). Second, even assuming

that estoppel may lie against the government in some circumstance, "[a]t the very minimum, some affirmative misconduct by a government agent is required as a basis of estoppel." *United States v. Guy*, 978 F.2d 934, 937 (6th Cir. 1992). The record has provided no evidence of affirmative misconduct by IRS agents handling Gardner's case.[5]

Debtor has further contended that the IRS "did not care about the inconsequential sums of money" in those accounts and never intended to collect his liabilities from those accounts. This contention finds no support in the record. These accounts held nearly $400,000 between 1992 and 1995, a not inconsequential sum. Moreover, the notion that the IRS would not have looked to the nominee accounts to satisfy Gardner's outstanding tax liabilities had it known of the large sums deposited defies common sense and garners no support from the testimony of IRS officials involved in the case. Keith Thomas, for instance, testified that he would not have processed either of debtor's settlement offers had he known about the debtor's $90,000 deposit into the nominee account belonging to debtor's secretary, or had he known about the $500,000 Gardner received in May 1993.

Gardner has also maintained that the financial forms he submitted to the government did not require him to disclose the existence of the nominee accounts because those forms sought only information about accounts held in appellant's own name. Contrary to appellant's assertion, the CIS form does not provide taxpayers with the kind of loophole suggested by Gardner, but requests instead all information

---

[5] To the contrary, according to the record evidence, Keith Thomas, the IRS collection agent assigned to debtor's case, did not learn about the nominee accounts until 1999, during the course of the instant litigation. While John Brandon, the IRS Offer Specialist who evaluated Gardner's second offer to compromise his tax liabilities, learned of the nominee account at the law firm and that set up by Gardner's accountant, he never received information about those accounts from the debtor even though he requested information on several occasions.

relevant to a person's financial condition, including "cash" and "recent transfers of assets for less than full value" – categories that encompassed the money Gardner was depositing into the nominee accounts.

Moreover, Gardner not only used the nominee accounts to shield his assets from the IRS, he additionally failed to honor his commitment to the IRS to use funds obtained from the settlements of large cases to satisfy his liabilities. Gardner's receipt of $500,000 in May 1993, attributable to the settlement of the Robinson case was not used to pay his outstanding 1990 or 1991 taxes.[6] Indeed, debtor did not even inform the government of the Robinson settlement. Gardner's failure to apply any monies from that settlement, or from the Cordis settlement,[7] to his outstanding liabilities in

---

[6] Although Gardner used $209,000 of the Robinson settlement to make an estimated tax payment for 1993 and he may have used $60,000 of the amount to pay State taxes, he did not use any portion of the remaining $231,000 to pay his 1990 or 1991 taxes. In his appellate brief, debtor contends that he allocated $100,000 of the distribution he received from his law firm to fund the offer in compromise that was pending before the IRS. That statement is at odds with the debtor's testimony in the bankruptcy court that he would have had to borrow the $100,000 if the offer had been accepted.

[7] Gardner informed Keith Thomas in April 1995 of his firm's representation of a plaintiff in the $21 million Cordis class-action lawsuit. Appellant testified that he had explained to Thomas that he was not the working attorney nor the originating attorney with respect to the Cordis case. After Gardner led Thomas to believe that his law firm would not pay debtor his 40% share of the anticipated contingency fee to the partnership, Thomas issued a levy on the partnership. Gardner subsequently filed this bankruptcy case and, contrary to his representation to Thomas, ultimately collected his share of the settlement proceeds ($170,000) from his law firm. Rather than dismiss this bankruptcy case and use those funds to fulfill his promise to Thomas to satisfy his obligations to the IRS, debtor pocketed the settlement proceeds and sought to have his tax obligations discharged in bankruptcy. The bankruptcy court not only found Gardner's explanation with regard to the levy "disingenuous," as avoiding the question of why Gardner dishonored his agreement with Thomas, but also found the timing of the bankruptcy

---

question constituted an "omission" that demonstrated the conduct element of Section 523(a)(1)(C), because he persuaded the Revenue Agents to defer collection activity with respect to those liabilities by promising to pay the outstanding amount with proceeds received from the settlements of his pending cases.

Finally, Gardner had the financial means to meet his outstanding tax liabilities. In reviewing Gardner's expenditures during the collection period, between September 1992 and June 1995, the bankruptcy court noted twenty golfing and vacation trips upon which appellant lavished substantial sums. Gardner has contended on appeal that the bankruptcy court erred by refusing to credit his testimony that most of the trips were business related. However, the bankruptcy court was not obligated to accept Gardner's characterization of his activities. *See Lovell and Hart, Inc. v. Commissioner*, 456 F.2d 145, 148 (6th Cir. 1972) (court not required to credit self-serving testimony, even if uncontradicted, if it finds the testimony improbable, unreasonable, or questionable). In the instant case, appellant failed to introduce any evidence that he claimed business-expense deductions for the expenses he incurred on his vacations. Moreover, a careful review of the evidence adduced at trial demonstrated that any business-related activities engaged in by appellant were insubstantial in comparison to his recreational activities.

The evidence in the record also supports the mental state requirement of § 523(a)(1)(C) that Gardner "willfully" avoided payment of his tax liabilities for 1990 and 1991. Appellant acknowledged before the bankruptcy court that he was aware of his legal responsibility to pay the taxes in issue.

---

filing "suspect," when two months after filing Gardner received his distribution generated by the Cordis settlement. As further evidence of evasive conduct, Gardner, in providing a list of pending cases requested by the trustee in the bankruptcy case, omitted the Cordis settlement.

Gardner also testified he could have used some of the $688,932 he earned in 1993 to pay his 1990 and 1991 taxes, but that he made a conscious decision not to apply the monies toward his tax debt. Given these facts, the bankruptcy court properly found that Gardner acted "willfully" with respect to his 1990 and 1991 tax obligations for purposes of § 523(a)(1)(C), precluding discharge of his tax liabilities.

Consequently, this court affirms the bankruptcy court's determination.