NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1616
_____

IN RE: BRUCE BRYEN,
                                        Debtor.

BRUCE BRYEN,
                                        Appellant.
v.

UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 2-10-cv-05030)
District Judge:  Honorable J. William Ditter, Jr.
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 5, 2011

BEFORE: McKEE, *Chief Judge*, FUENTES and GREENBERG*, Circuit Judges*

(Opinion Filed: November 4, 2011)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge.*

Appellant Bruce Bryen filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. In his bankruptcy schedules, Bryen included a $19 million general unsecured debt for unpaid taxes, and subsequently initiated an adversary proceeding to discharge the debt. The Bankruptcy Court found the debt non-dischargeable and the District Court affirmed. He timely appealed.[1]

We will affirm.

## I.

Because we write for the parties, we discuss the facts only to the extent necessary for the resolution of the issues raised on appeal. Bryen is a licensed Certified Public Accountant ("CPA") with over 35 years of experience. In the late 1970's and early 1980's, he co-owned an accounting firm with his father that created and promoted tax shelters involving employee leasing partnerships. In addition to recommending these tax shelters to his clients, Bryen personally invested in them and claimed them as deductions on his tax returns.

The IRS disallowed the deductions and issued notices of deficiency, which Bryen challenged in the United States Tax Court. The Tax Court concluded that Bryen's employee leasing partnerships and related tax shelters were "shams" because they "present[ed] only an image of genuine lending, borrowing, and investment transactions." *Bealor v. Commissioner,* 72 T.C.M. (CCH) 730, (1996). However, the Tax Court did not determine the precise amount of Bryen's tax deficiency and for five years after that, Bryen received no information from the IRS regarding how much he owed. In summer

---

[1] We have jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291.

of 2001, the IRS contacted him and in summer of 2002, he stipulated to owing approximately 13 million dollars.

Notwithstanding his stipulations and huge debt, Bryen failed to make any payments toward his outstanding tax liabilities. In 2004, he filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code. According to the Bankruptcy Court, "[a]t no time during the pendency of the bankruptcy case did the IRS or [Bryen] file a complaint to determine the dischareability of the [t]ax [d]ebt." *In re Bryen*, 433 B.R. 503, 506 (Bankr. E.D. Pa 2010). In September 2004, Bryen's bankruptcy case was closed. Nearly three years later, the IRS began a collection action against Bryen to collect his unpaid taxes. In response, Bryen filed a motion in the Bankruptcy Court to reopen his bankruptcy case "so that he could initiate an adversary proceeding to obtain a determination of the dischargeability of the [t]ax [d]ebt." *Id.* The Bankruptcy Court granted his request and Bryen filed an adversary complaint against the IRS. Ultimately, the Bankruptcy Court determined that Bryen's tax debt was not discharged in the initial bankruptcy proceeding and that his adversary complaint failed to set forth sufficient grounds for dischargeability because Bryen had willfully attempted to evade his tax liability under Section 523(a)(1)(C) of the Bankruptcy Code

It is worth noting that despite his bankruptcy proceeding and substantial tax burden, Bryen lived a comfortable lifestyle. The Bankruptcy Court found that Bryen paid half of all his household expenses on homes solely owed by his wife and paid half of the cost of substantial improvements on those homes. *Bryen*, 433 B.R. at 514. The court also found that he paid for half, along with his wife, of the expenses for multiple

3

vacations to foreign countries such as Costa Rica, Panama City, France, Australia, Italy, Austria, Germany, Switzerland, and Mexico, all the while staying at expensive hotels. *Id.* In the decade between the Tax Court's decision and the Bankruptcy Court's determination that the debt was nondischargeable, Bryen did not make a single payment to reduce his tax debt nor did he save any money to do so.[2]

## II.

When a debtor files a petition under Chapter 7 of the Bankruptcy Code, the debtor is generally granted a discharge from all debts arising prior to the filing of the bankruptcy petition. 11 U.S.C. § 727(b) (1994); *see also In re Birkenstock,* 87 F.3d 947, 950 (7th Cir. 1996); *In re Toti,* 24 F.3d 806, 808 (6th Cir. 1994). This remedial policy applies only to the "honest but unfortunate debtor." *Grogan v. Garner,* 498 U.S. 279, 286-287 (1991).

A debtor who willfully evades a tax is not entitled to a discharge of that debt. Section 523(a)(1)(C) provides:

> (a) A discharge under section 727 … of this title does not discharge an individual debtor from any debt—
> (1) For a tax or a customs duty –
> (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

11 U.S.C. § 523(a)(1)(C).

---

[2] "[W]e review the bankruptcy court's findings by the standards the district court should employ, to determine whether the district court erred in its review." *In re Fegeley,* 118 F.3d 979, 982 (3d Cir. 1997) (quoting *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102 (3d Cir. 1981)). We review facts under the clearly erroneous standard and review conclusions of law de novo. *Id.*

The Government has the burden of proving beyond a preponderance of the evidence that Bryen willfully attempted to evade his taxes. *In re Fegeley*, 118 F.3d 979, 983 (3d Cir. 1999). First, the Government must show that Bryen's conduct sufficiently demonstrates that he was attempting to evade his taxes. *Id.* There is no specific conduct that constitutes evasion, rather we look at the totality of the circumstances. *Id.* Although non-payment alone does not constitute evasion, it is relevant evidence. *Id.*

Second, the Government must show that Bryen's attempt to evade his taxes was "willful." *Id.* A debtor evades his taxes willfully when it is "voluntary, conscious, and intentional." *Id.* at 984. Therefore, to prevail, the Government need only establish that (1) the debtor had a duty to file income tax returns; (2) the debtor knew he had such a duty; and (3) the debtor voluntarily and intentionally violated that duty. *Id.*

Once the Tax Court held that his tax shelters were shams, Bryen was aware he owed back taxes to the IRS. While he did not know the specific amount of the tax deficiency until 2001, he was aware that it would be substantial. Nonetheless, Bryen continued to live high on the hog. He earned income that exceeded his modest, fixed living expenses. He made no attempt to save in anticipation of the tax debt. Further, after he signed the stipulations with the IRS, he did not change his behavior. He did not make any payments to the IRS to reduce his tax liability and continued to deal in cash to avoid having creditors attach his bank accounts.[3] Thus, the totality of the circumstances justify finding that he was attempting to evade his taxes under § 523(a)(1)(C).

---

[3] Bryen contends that he only dealt in cash to avoid attachment by creditors other than the IRS and thus this should not weigh towards finding evasion. We disagree. The system Bryen devised to avoid his other creditors served precisely the same function as to the IRS.

Bryen argues that he did not "willfully" evade an assessed tax, because the IRS did not assess the tax until 2002. However, Section 523 only references taxes, not assessed taxes and a delay in enforcement cannot mean that a taxpayer, aware that he owed the IRS a substantial sum, can never have the requisite intent to evade. As the Bankruptcy Court noted, "it is hard to imagine that the outstanding tax debt did not loom over [Bryen] like a 'Sword of Damocles.'" *In re Bryen,* 433 B.R. 503, 519 (Bankr. E.D. Pa. 2010). Yet, unlike the Damocles of legend, Bryen never sought to give up his lifestyle to free himself of this sword. His lifestyle, combined with his deliberate attempts to avoid his creditors, justifies the Bankruptcy Court's finding that he acted intentionally and voluntarily in evading his tax obligations. *See In re Fegeley,* 188 F.3d at 984 (finding that the Debtor's evasion was willful when he "probably had enough money to pay th[e] taxes[,]… spent too much[,] … was much too lavish[, and] … didn't make good judgments about the allocations of his resources."); *see also In re Gardner*, 360 F.3d 551, 561 (6th Cir. 2004) (finding the taxpayer's lifestyle which included numerous vacations coupled with his lack of payment of his tax debt suggested a willful evasion of the tax debt).

Thus, the District Court properly affirmed the Bankruptcy Court's decision that Bryen willfully attempted to evade a tax and that his tax debt was not dischargeable in bankruptcy.

## IV.

For the foregoing reasons, we affirm the District Court.