NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0056n.06

No. 21-5693

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

In re: COOK AND SONS MINING, INC.; EARNEST COOK & SONS MINING, INC.,

    Debtors.

_____

JAMES DILLON ASHER,

    Appellant,

v.

COOK AND SONS MINING, INC.; EARNEST COOK & SONS MINING, INC.; U.S. TRUSTEE; INTERNAL REVENUE SERVICE; LETCHER COUNTY, KENTUCKY; AMERICAN ELECTRIC POWER COMPANY, INC.; AIRGAS MID AMERICA; AMERICAN HYDRAULICS; CSX TRANSPORTATION, INC.; CUMBERLAND SURETY; DEERE CREDIT, INC; DENNIS WANYE FLEMING; DENNIS W. FLEMING, CPA; JOY MINING MACHINERY; COMMONWEALTH OF KENTUCKY REVENUE CABINET; LETCHER COUNTY SOLID WASTE; MINE MANAGEMENT CONSULT; MARLIN LEASING CORPORATION; METALCRAFT MINING EQUIPMENT, INC.; MINING MACHINERY SERVICES, LLC; MINING REPAIR SPECIALISTS; SECRETARY OF LABOR, MINE SAFETY AND HEALTH ADMINISTRATION; BREEDING HEAVY HAULERS; C & C CONSTRUCTION; CARQUEST OF WHITESBURG, KY; COLUMBIA NATURAL RESOURCES, INC.; SGS NORTH AMERICA, INC.; T&N ELECTRIC MOTOR EXCHANGE; XEROX CORPORATION; MOUNTAIN MINERALS; SANDRA COOK; KENTUCKY UTILITIES DAMAGES; KWVA ENERGY, INC.; LEE ADAM HEIRS; CARLA ISON; ELAINE CAUDILL; MARTIN COLLIER; ISON BROTHERS; CHARLES E. BANKS HEIRS; MILDRED BAKER; NEWBRIDGE SERVICES, INC.; LINDA FIELDS, JAMES HARRY FIELDS, deceased; LETCHER COUNTY COAL & IMPROVEMENT; AEP KENTUCKY COAL, LLC; LEE ETTA CUMMINGS; CAROLYN HENSLEY; SANTEE COOPER,

    Appellees.

FILED
Jan 28, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

Before: CLAY, GRIFFIN, and STRANCH, Circuit Judges

GRIFFIN, Circuit Judge.

As special counsel, attorney James Asher performed legal work related to a bankruptcy action beginning in 2003. He was paid for that work in 2007. Over a decade later, the debtors unexpectedly received a refund for overpaid insurance premiums, and Asher now seeks to recover 40% of that refund as an attorney fee. The bankruptcy court found that the tardy refund was unrelated to the scope of Asher's work as special counsel, so he was not entitled to any portion of the refund. The district court affirmed the bankruptcy court's decision. We also agree and affirm.

I.

In 2003, Debtors Cook and Sons Mining, Inc. and Earnest Cook & Sons, Mining, Inc. filed voluntary chapter 11 bankruptcy petitions. The cases were consolidated, and the Debtors were represented by law firm Bunch & Brock during the bankruptcy proceedings.

The Debtors also moved to appoint appellant James D. Asher as "Special Counsel under Code Section 327(e)" on a contingent fee basis ("Employment Application"). The Employment Application explained that Debtors sought to employ Asher for "special and specific purposes." Relevant to this appeal, Asher was hired to assist the Debtors with:

> Legal services rendered in the prosecution and collection of claims and/or causes of action against *only* the following entities with compensation to be paid to Asher on a contingency fee basis according to the terms and conditions set forth in the attached agreements, . . . regarding the filing of:
>
> (i)     Underwriters Lloyd's at [sic] London regarding the collapse of the Debtors' silo and the damages resulting therefrom; and
>
> (ii)    C S & W Insurance Services, Inc., National Casualty Company, Casualty & Surety, Inc. American Safety Risk Retention Group, Inc., James Godfrey or any other related party thereto regarding water damage claim.

(Emphasis added.)

Two contingency fee agreements ("CFAs"), executed by the Debtors and Asher, were attached to and filed with the Employment Application. The scope of each CFA was parallel to the scope of the language in the Employment Application: One CFA addressed damages related to the collapse of a coal silo and related insurance coverage provided by Lloyd's of London ("Lloyd's"), and the second CFA addressed water damage and related insurance coverage provided by several entities. The bankruptcy court approved Asher's employment as special counsel in an order consistent with the Employment Application and the two CFAs.

As special counsel, Asher filed suit against Lloyd's and CS&W Insurance Services in state circuit court. According to that complaint, CS&W Insurance told Earnest Cook & Sons Mining that a policy issued by Lloyd's was in place. But when a raw coal silo blew out and collapsed in 2003, Lloyd's denied coverage; the complaint alleged that coverage was denied because CS&W Insurance was negligent and breached its duty when placing the insurance. This litigation was successful: In 2007, the court found that the silo was covered by the Lloyd's policy. The matter eventually settled, and the Debtors received over a million dollars in that settlement. From this, Asher received $451,134.77 for his contingent fee and expenses. A few months later, the Final Report was filed in the chapter 11 proceeding, and the Debtors' bankruptcy case was closed on June 9, 2008.

Over a decade later, Bunch & Brock moved to reopen the case because a representative of American International Group ("AIG") had notified the firm that AIG was holding "Return Premiums of approximately $367,472" which it would not turn over without a court order (the "AIG Refund"). The bankruptcy court reopened the case to administer those premiums.

The AIG Refund evidently arose from insurance policies issued by AIG, which had provided workers compensation, automobile, and general liability coverage for the Debtors. Asher

sought to recover 40% of the AIG Refund (totaling $146,988.73) based on his contingent fee arrangement with the Debtors. The Debtors did not oppose Asher's request for fees. But the bankruptcy court determined that Asher was not entitled to any portion of the AIG Refund, and it denied his application for fees. Asher appealed to the district court, which upheld the bankruptcy court's decision. He now appeals.

## II.

When a bankruptcy court order is appealed to the district court and then to this court, we review "the bankruptcy court's decision directly, without being bound by the district court's legal determinations." *In re DSC, Ltd.*, 486 F.3d 940, 944 (6th Cir. 2007). We review the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo. *In re Gardner*, 360 F.3d 551, 557 (6th Cir. 2004).

Section 327(e) of the Bankruptcy Code allows the trustee, with the court's approval, to employ an attorney "for a specified special purpose . . . if in the best interest of the estate." 11 U.S.C. § 327(e). And under § 328(a), the trustee, again with the court's approval, may employ a professional under § 327 "on any reasonable terms and conditions of employment, including on . . . a contingent fee basis." 11 U.S.C. § 328(a). In other words, under § 328, the court may "pre-approve" the professional's compensation. *See In re Airspect Air, Inc.*, 385 F.3d 915, 920 (6th Cir. 2004). If the court does not preapprove compensation under § 328, the bankruptcy code provides for "reasonable compensation" for services rendered. *Id.*; 11 U.S.C. § 330(a). Whether § 328 or § 330 applies to an award of attorney fees is a question of law that we review de novo. *Gardner*, 360 F.3d at 557; *see also In re Fashion Shop of Kentucky, Inc.*, 350 F. App'x 24, 27 (6th Cir. 2009).

At the outset, we note that the Debtors do not take a position on the merits of Asher's request. However, the bankruptcy court had a duty to independently review the fees sought and

reduce them if they were noncompensable. *See In re 5900 Assocs., Inc.*, 468 F.3d 326, 330 (6th Cir. 2006) ("The Bankruptcy Code assigns to courts a comprehensive duty to review fees in a particular case."). And we have jurisdiction to review the bankruptcy court's order under 28 U.S.C. §§ 158 and 1291, so we will review the attorney fee award despite the Debtors' decision not to challenge Asher's request. *See id*. at 330–31.

The Debtors employed Asher as their "special counsel" under 11 U.S.C. § 327(e). Section 327(e) limits the scope of a professional's work: an attorney retained under this section may only pursue claims related to the "specified special purpose," not for general management of the bankruptcy. 11 U.S.C. § 327(e); *see also In re West Pointe Props., L.P.*, 249 B.R. 273, 284 (Bankr. E.D. Tenn. 2000). Similarly, he may receive compensation only for services related to that specified special purpose. *See In re Brierwood Manor, Inc.*, 239 B.R. 709, 717–18 (Bankr. D.N.J. 1999). And he must seek court approval if the work goes beyond the special purpose. *See id.*; *see also In re Licking River Mining, LLC*, No. 14-10201, 2015 WL 5601284 at *10 (Bankr. E.D. Ky. Sept. 22, 2015) ("Attorneys who render services beyond the specified scope of their retention risk denial of compensation for such unauthorized services." (quoting Collier on Bankruptcy ¶ 327.04[9][c] (Richard Levin & Henry J. Sommer eds., 16th ed.)).

What, then, was the scope of Asher's work? The record shows that his work was limited to pursuing claims associated with the coal silo collapse and related water damage. Begin with the CFAs, which are contracts governed by Kentucky law. Kentucky courts will enforce a contract "strictly according to its terms," and will assign a contract's terms their "ordinary meaning" in the absence of ambiguity. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). A contractual term is ambiguous only if it is reasonably "susceptible to inconsistent interpretations." *Transp. Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. Ct. App. 1994).

The CFAs contain parallel clauses outlining the scope of work Asher was hired to do. The first contract, regarding the collapse of the silo, contains the following language:

> Clients hereby retain and employs [sic] [Asher] to represent Clients for Underwriters Lloyd's at [sic] London regarding the collapse of a silo and damages resulting therefrom and pursuit of, all applicable insurance proceeds, if any, and any and all other causes of action that [Asher] deems necessary (referred to as "Claim").

And the second contract, regarding the water-damage claim, contains the following language:

> Clients hereby retain and employs [sic] [Asher] to represent Clients against C S & W Insurance Services, Inc., National Casualty Company, Casualty & Surety Inc., American Safety Risk Retention Group, Inc., James Godfrey and any other related party thereto regarding water damage claim(s) and damages resulting therefrom, and pursuit of, all applicable insurance proceeds, if any, and any and all other causes of action that [Asher] deems necessary (referred to as "Claim").

Asher argues that "every issue" turns on the final clause in these sentences: he was authorized to pursue "any and all other causes of action" that he deemed necessary. Thus, under his interpretation, *any* recovery flowing from *any* action he took as special counsel is subject to the agreements' 40% attorney fee. Not so: when reading the "any and all" language in context, it is clear that the CFAs do not allow this latitude. Instead, they show that Asher was retained to pursue claims against Lloyd's regarding the silo collapse, and to pursue claims against CS&W and related entities regarding water damage. The "any and all" language is in the same sentence as this limiting language. While the "any and all" clause may be theoretically broad if read in isolation, when correctly read in context, it evidences an intent to give Asher latitude only to take "any and all" actions pertaining to the silo-collapse and water-damage claims. In other words, he had latitude to take actions necessary to pursue these specific claims, not to file literally any and all claims he wished. Indeed, the broad reading Asher requests would run counter of § 327(e)'s special purpose requirement. If Asher could pursue "any and all" claims he wished, he could not have been employed under § 327(e). *See West Pointe Props.*, 249 B.R. at 284.

Further, all record evidence supports the conclusion that Asher was limited to pursuing insurance claims related to the silo collapse and water damage. The Employment Application specifically sought to appoint him under § 327(e) and its narrow, special purpose scope. It limits the scope of Asher's work "only" to the entities listed therein, a list that did not include AIG. And Asher's contemporaneous declaration confirms that he understood he was employed to pursue insurance litigation related to the silo collapse and the water damage. Accordingly, the bankruptcy court correctly concluded that the scope of Asher's representation was limited to pursuing the silo-collapse and water-damage claims.

That leaves only one question: is the AIG Refund within the scope of Asher's employment as special counsel? The bankruptcy court found that the Debtors used AIG for workers compensation and related insurances, and there is no record evidence that AIG ever insured the silo or the water-damaged property. Nor is there evidence that Asher ever interacted with AIG during the state court litigation. We cannot disturb these findings of fact unless Asher shows them to be clearly erroneous, and he makes no such showing. While it is unclear why AIG issued such a tardy refund, the record does not demonstrate that it is related to the silo-collapse or water-damage claims. Consequently, the AIG Refund is outside the scope of Asher's employment, and the bankruptcy court correctly concluded that he cannot recover a preapproved attorney fee.[1]

## III.

For these reasons, Asher is not entitled to recover any portion of the AIG Refund. Accordingly, we affirm the district court's judgment upholding the bankruptcy court's order.

---

[1]Before the bankruptcy court and the district court, Asher argued in the alternative that he is entitled to recover a portion of the AIG premiums based on § 330. He makes no such argument on appeal, so he has abandoned that argument and we need not consider it. *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014).