**In the Matter of William H. ZUHONE, Jr., and Audra M. Zuhone, Debtors–Appellants.**

No. 95–3771.

United States Court of Appeals, Seventh Circuit.

Argued May 14, 1996.

Decided July 8, 1996.

**470**

Gary R. Allen, Charles Bricken, Gary D. Gray, Department of Justice, Appellate Section, Douglas W. Snoeyenbos, and Sally J. Schornstheimer (argued), Department of Justice, Tax Division, Washington, DC, for appellee.

Phillip H. Hamilton (argued), Vassen & Vetter, Belleville, IL, for debtors–appellants.

Before POSNER, Chief Judge, and ESCHBACH and EVANS, Circuit Judges.

ESCHBACH, Circuit Judge.

After years of unsuccessfully challenging IRS tax assessments, William and Audra Zuhone filed Chapter 7 bankruptcy seeking to discharge their debts, including their tax obligations. The IRS argued that the Zuhones had engaged in a series of transactions evincing a willful attempt to evade paying their taxes. The bankruptcy court agreed with the IRS, and refused to discharge the Zuhones' tax burdens pursuant to 11 U.S.C. § 523(a)(1)(C). The district court affirmed the bankruptcy court. Because we conclude that the bankruptcy court's findings are not clearly erroneous, we affirm the decision of the district court.

**I.**

During the period from 1975 until 1982, William and Audra Zuhone failed to report a portion of their income on their federal income tax returns. In 1984, the IRS audited the Zuhones. Also in 1984, the Zuhones took the first in a series of steps that appear to be designed to shelter the Zuhones' assets. William Zuhone created Dedica Corporation, an oil and gas leasing concern, naming his daughters as shareholders and directors but retaining control of management and spending decisions.[1] Zuhone's daughters participated minimally, if at all, in the management of Dedica.

In 1985, Zuhone transferred his stock in Zodiac Corporation to his daughters. Shortly thereafter, the IRS issued to the Zuhones notices of tax deficiencies for 1975 and 1977 through 1981. The Zuhones petitioned the Tax Court on December 13, 1985, seeking a redetermination of those deficiencies. The matter was tried before the Tax Court. In December of 1987, the Zuhones transferred a remainder interest in 75 acres of farmland to their three daughters while retaining a life estate for themselves.

---

1. The State of Illinois had prohibited William Zuhone from selling securities or engaging in oil related business within the state. Zuhone claimed that he created Dedica as a subterfuge to circumvent the Illinois prohibition against Zuhone conducting business in Illinois.

On April 6, 1988, the Tax Court ruled in favor of the IRS. On June 8, 1988, the Zuhones mortgaged their home in the amount of $220,000. Some of the money, $180,000, went to pay the Zuhones' notes at Central National Bank of Mattoon ("CNB"), a bank in which the Zuhones were stockholders. Also in June of 1988, the Zuhones liquidated a portion of their stock portfolio in the amount of $130,000, and used the proceeds to satisfy the Zuhones' obligations at CNB. The Zuhones' obligations to CNB were not delinquent at the time. On June 10, 1988, Dedica signed a guarantee to CNB, guaranteeing more than $500,000 of the Zuhones' personal liabilities, in exchange for unspecified gas and oil properties from the Zuhones. On August 22, 1988, the IRS assessed the deficiencies determined by the Tax Court, totalling $2,177,771 in tax and interest, for 1975 and 1977 through 1981. By a deed filed on August 30, 1988, the Zuhones transferred a remainder interest in an additional 87 acres of farmland to their daughters while retaining a life estate for themselves. By a deed dated December 28, 1988, but not recorded until March 9, 1989, the Zuhones transferred to Dedica 40 acres in California in exchange for Dedica's assumption of a promissory note. However, the promissory note allegedly assumed by Dedica in December of 1988 was paid in full in July of 1988.[2] The Zuhones' tax returns for 1988 also reflected that in 1988 the Zuhones gave each of their daughters $10,000 in cash.

On May 3, 1989, an IRS collection officer informed William Zuhone that the officer would file a federal tax lien against the Zuhones' assets. Zuhone asked for a delay in filing the lien. That same day Zuhone depleted his money market account in the amount of $25,071.29. Days later Audra Zuhone transferred 40 shares of stock in CNB to Sue Rothschild. On May 18, 1989, the Zuhones offered the IRS $20,000 in settlement of their more than $2 million tax obligation.

On June 19, 1989, William Zuhone incorporated DDC Oil, with his daughters serving as shareholders, directors, and officers. Zuhone, however, served as manager. On July 31, 1989, the IRS assessed additional tax deficiencies against the Zuhones, totalling $36,576.57, for 1987 and 1988. In October of 1989, the IRS attached William Zuhone's wages from Dedica for all amounts above the minimum wage. Zuhone, in response, reduced his wage at Dedica to the minimum wage.

In September of 1990, Zuhone negotiated the purchase of a home in the name of Kenneth Freed. The Zuhones moved into the home and made "rent" payments to Freed whenever the Zuhones had "some money." The parties had no formal rental agreement. Meanwhile, the former owners of the Freed home moved into the Zuhones' former residence. In December of 1990, the IRS filed a second attachment of Zuhone's wages from Dedica, with no exemption for a minimum wage. Zuhone then stopped collecting a salary from Dedica altogether.

In 1993, the Zuhones transferred to their daughters stock in Big 4 Drilling Company—stock the Zuhones claim was valueless. The corporate minutes reflect that William Zuhone continued as the company's principal, representing his daughters. In June through August of 1993, the IRS served to the Zuhones summonses to give testimony and produce financial records regarding their assets. After seeking several postponements of the date of compliance with the summonses, the Zuhones filed for Chapter 7 bankruptcy.

The Zuhones never paid their tax liabilities. Rather, they filed the instant claim in bankruptcy court requesting that their tax obligations for 1975, 1977–1981, and 1987–1988 be discharged under Chapter 7. The IRS argued that pursuant to 11 U.S.C. § 523(a)(1)(C) the taxes were not dischargeable because the Zuhones had willfully attempted to "evade or defeat" the tax obligations. The bankruptcy court ruled in favor of the IRS and refused to discharge the debt. The Zuhones appealed to the district court. The district court affirmed. The Zuhones

---

**2.** The Zuhones now claim that the 40 acres was in fact partial consideration for Dedica's $500,-000 guarantee to CNB in June of 1988.

now bring this timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 158(d).

## II.

The Zuhones make two arguments on appeal. First, they contend that the bankruptcy court's factual findings are clearly erroneous. Next, the Zuhones contend that the government failed to prove that they acted with the requisite willfulness to prevent a discharge of the tax debt under 11 U.S.C. § 523(a)(1)(C). We will address briefly each of these arguments in turn.

In several pages of briefing, the Zuhones unsuccessfully attempt to call into question virtually every factual determination made by the bankruptcy court. Reviewing the Zuhones' numerous factual objections for clear error, we find that the objections are so meritless that they do not warrant individual treatment in this opinion. However, the Zuhones' factual objections appear to be based on an incorrect view regarding a fact-finder's ability to infer some facts from others. Because future litigants will benefit from a discussion of this issue, we will address it.

The Zuhones do not challenge whether the events discussed above actually occurred. The Zuhones concede that, among other things, they: transferred money and farmland to their children; created corporations owned by their children but controlled by William Zuhone; paid off undue loans from creditors while failing to pay their tax debts; and, intentionally lowered William Zuhone's salary so as to circumvent the parameters of IRS wage garnishments. Rather, the Zuhones challenge the bankruptcy court's findings regarding the Zuhones' reasons for committing the various acts. Specifically, the Zuhones challenge all of the court's findings that the Zuhones' conduct was designed to avoid paying their tax obligations.

The Zuhones' objections rest on the fact that the Zuhones and their children testified that the Zuhones had honest motives for their conduct. According to the testimony of the Zuhones and their children, although they engaged in all of the various schemes and devices alleged by the government, their purpose was not to avoid paying their tax liabilities. Members of the Zuhone family were the only witnesses before the bankruptcy court that expressly discussed the intent underlying the actions in question. The government offered no witnesses who expressly contradicted the Zuhones' testimony as to intent. Because the government failed to produce witnesses to expressly address the issue of intent, the Zuhones argue that the court's findings that the Zuhones engaged in the various acts in question to evade paying taxes are necessarily erroneous.

The Zuhones are apparently unfamiliar with the age old cliche: actions speak louder than words. What happened in this case is commonplace in adjudication. The fact-finder considered the government's proof that the Zuhones engaged in a number of extremely dubious transactions during the same time period that the IRS was investigating and litigating the Zuhones' failure to pay their taxes. The fact-finder then considered the Zuhones' explanation for their conduct, and simply found the testimony incredible. The bankruptcy court said:

> I found the testimony of the debtors was not credible. When they began this journey to deceive the IRS and avoid these taxes, they did what people often do. They became tangled in their own stories.

Regarding the testimony of the Zuhones' daughters, the court said:

> And it was clear to me that [the daughters] spent about as much time getting ready for this trial as they had running this business in the last few years.

Once the Zuhones' proffered testimony is discredited, their actions speak for themselves. For example, William Zuhone twice reduced his salary from Dedica corporation to prevent the IRS from collecting any money to apply toward Zuhone's tax burden. William Zuhone explained the salary reduction as an effort to avoid earning more money than the IRS wanted him to. But, with all due respect to Mr. Zuhone, his explanation is laughable. Obviously Zuhone decreased his salary to avoid the IRS garnishment. Based on this record, we cannot say that the lower court's determination that the Zuhones willfully sought to "evade or defeat" their taxes is clearly erroneous. *Cf. United*

States v. Levy, 741 F.2d 915, 922 (7th Cir.) (noting that intent can be inferred from conduct), *cert. denied,* 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984); *United States v. Azzarelli Constr. Co.,* 612 F.2d 292, 298 (7th Cir.1979) (same), *cert. denied,* 447 U.S. 920, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980).

The Zuhones' second argument is as frivolous as their first. Indeed, their second argument mirrors their first. The Zuhones argue that the government failed to introduce any evidence to support the conclusion that the Zuhones' tax evasion was willful. Title 11 U.S.C. § 523 provides:

(a) A discharge ... does not discharge an individual debtor from any debt—

(1) for a tax ...

(C) with respect to which the debtor ... willfully attempted to evade or defeat such tax.

In defining "willfully," the bankruptcy court applied the definition commonly applied to civil statutes: "voluntary, conscious, and intentional." *See Domanus v. United States,* 961 F.2d 1323, 1326 (7th Cir.1992); *Matter of Bruner,* 55 F.3d 195, 197 (5th Cir.1995); *In re Toti,* 24 F.3d 806, 808 (6th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994).

The Zuhones do not challenge the definition of willful applied by the bankruptcy court. Rather, the Zuhones contend that the government failed to prove by a preponderance of the evidence that their conduct was willful as defined by the court. The Zuhones argue that the gifts to their daughters of farmland and money were "bona fide," and that the government failed to prove otherwise. The payments to CNB, according to the Zuhones, were preferential transfers, not willful efforts to avoid taxes. Finally, the Zuhones claim that the shell corporations created by the Zuhones for their daughters were legitimate businesses, not attempts to evade the IRS.

■ We need not decide whether any one of the Zuhones' actions, viewed in isolation, constitutes a willful attempt to evade or defeat their tax obligations. It is clear that the sum total of the Zuhones' actions throughout the several years in question provides a more than adequate basis for the lower court to conclude that the Zuhones were attempting to avoid paying their taxes, and that their attempts were "voluntary, conscious, and intentional." As we noted above, mens rea can be inferred from conduct. We agree with the district court that the record "cries out" with evidence to support the bankruptcy court's decision. The court's finding is not clearly erroneous.

## Conclusion

The facts of this case make clear that the Zuhones engaged in numerous schemes designed to avoid paying their creditors, including the IRS. The bankruptcy court's finding of culpability was based on reasonable inferences that the court drew from the Zuhones' conduct. Its factual findings are supported by ample evidence. The decision of the district court is

AFFIRMED.