# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60704

United States Court of Appeals
Fifth Circuit

**FILED**

December 12, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARKUS BRENT STANLEY,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:13-CV-864

Before KING, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:*

Dr. Markus Stanley ("Stanley") did not fully pay his tax liabilities for the years 1998 through 2010. In 2011, the United States of America (the "Government") brought a civil action to reduce to judgment Stanley's tax liabilities for the tax years 1998-2010. In doing so, the Government asked the district court to determine that Stanley's tax liabilities for the years 1998-2008 were excepted from an earlier discharge in bankruptcy. The district court first

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-60704

granted summary judgment for the Government as to Stanley's tax liabilities for the years 2005-2010 and then, following a bench trial, ruled in favor of the Government regarding Stanley's 1998-2004 tax liabilities as well. Stanley appeals both decisions. For the reasons that follow, we AFFIRM the district court's judgment.

## BACKGROUND

Stanley is a doctor of osteopathic medicine, having been licensed to practice medicine since approximately 1994. He has worked primarily in emergency room and family medicine. The district court found, and Stanley does not contest, that:

> Dr. Stanley filed his tax returns late for the years 1998, 1999, 2000, 2003, 2005, 2006, 2007, 2008, 2009, reported the wrong taxable income amount for the years 1998, 1999, 2000, 2001, 2003, and has not paid his tax liabilities in full for any of the eleven consecutive tax years from 1998 through 2008 in spite of the IRS's considerable efforts to collect them.

The parties also do not dispute the amounts of the liabilities.

On May 18, 2009, Stanley filed a petition for Chapter 7 bankruptcy protection under Title 11 of the United States Code. Stanley's bankruptcy schedule included, *inter alia*, federal income tax liabilities for the years 1998-2010, totaling $1,316,354.66. On January 19, 2011, the bankruptcy court granted Stanley a discharge from his debts pursuant to 11 U.S.C. § 727. With some notable exceptions, a § 727 discharge grants a general release from debts that arose prior to the discharge. *See* 11 U.S.C. § 727(b). The Government did not appeal the discharge.

On August 11, 2011, the Government filed suit against Stanley, seeking to reduce to judgment Stanley's federal income tax liabilities for the tax years

1998-2010.    The Government argued that Stanley's tax liabilities were excepted from his earlier discharge in bankruptcy pursuant to 11 U.S.C. § 523. After more than a year of discovery, the Government filed a motion for summary judgment, which the court granted in part and denied in part.  The court reduced to judgment Stanley's tax liabilities for the years 2009 and 2010 because those liabilities accrued after he filed for bankruptcy.  Similarly, the district court concluded that Stanley's liabilities for the years 2005-2008 were excepted from discharge because they were assessed in the three years immediately before Stanley filed for bankruptcy.    *See* 11 U.S.C. §§ 507(a)(8)(A)(i) & 523(a)(1)(A).    However, the district court denied the Government summary judgment as to Stanley's tax liabilities for the years 1998-2004, because nondischargeability of those liabilities required a showing that "the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax."  11 U.S.C. § 523(a)(1)(C).  The district court determined that there was a genuine dispute of material fact as to whether Stanley had the requisite mental state for his 1998-2004 liabilities to be nondischargeable and therefore decided that a bench trial on that question was warranted.

Stanley argued that because he suffered from type II bipolar disorder, he was incapable of forming the requisite "willful" mental state.  At trial, a forensic psychologist testified for Stanley and concluded that Stanley indeed suffered from a bipolar II disorder, which manifested in depressive episodes that could cause the impairment of occupational and routine functioning.  The psychologist testified that there would have been times when Stanley was not experiencing any symptoms of his bipolar condition, and then other periods when he would slip into depressions or periods of irresponsible conduct.  The

No. 13-60704

psychologist also testified that Stanley's failure to pay taxes was consistent with his bipolar disorder.  Despite this testimony, the district court ruled in favor of the Government, finding that Stanley had "willfully" attempted to evade taxes.  *United States v. Stanley*, No. 5:11cv117–DCB–RHW, 2013 WL 4508410, at *9 (S.D. Miss. Aug. 23, 2013).

## STANDARD OF REVIEW

"The standard of review for bench trials is well-established: findings of fact are reviewed for clear error; legal issues de novo."  *Ergon-W. Va., Inc. v. Dynegy Mktg. & Trade*, 706 F.3d 419, 424 (5th Cir. 2013) (internal quotation marks omitted).  "[T]he question whether a debtor willfully attempted to evade or defeat taxes is a question of fact, subject to the clearly erroneous standard of review."  *United States v. Warden*, 59 F.3d 1242, 1995 WL 413034, at *2 n.1 (5th Cir. 1995) (per curiam) (unpublished) (citing *In re Midland Indus. Serv. Corp.*, 35 F.3d 164, 165 (5th Cir. 1994)); *see also In re Vaughn*, 765 F.3d 1174, 1180 (10th Cir. 2014); *In re Jacobs*, 490 F.3d 913, 921 (11th Cir. 2007); *In re Zuhone*, 88 F.3d 469, 470, 473 (7th Cir. 1996).

## DISCUSSION

### I.     Estoppel

Stanley first argues that the district court should not have heard this case at all, because the Government's proper recourse was a direct appeal of the bankruptcy court's decision.  Stanley variously terms this argument "the law of the case," "issue preclusion," and "standing."  The district court denied Stanley relief on this ground because it found that Stanley had waived the argument.  We agree.

4

No. 13-60704

In his answer to the Government's original complaint, Stanley stated that the Government was estopped from pursuing collection of his tax liabilities because it failed to initiate adversarial proceedings during the pendency of the bankruptcy proceedings. He did not, however, pursue this argument in a motion to dismiss or for summary judgment. When the Government moved for summary judgment, estoppel was not among Stanley's arguments in response. After the court granted the Government's motion in part, Stanley filed a motion for reconsideration in which he claimed, for the first time, that the Government was required to appeal the bankruptcy court's discharge if it considered the discharge to be improper. The district court held that Stanley had waived this argument by failing to raise it in his responses to the Government's motion for summary judgment or in a motion for summary judgment of his own.

The district court's local rules require affirmative defenses to be raised by separate motion. S.D. MISS. L. UNIF. CIV. R. 7(b)(2)(A). "Although the affirmative defenses may be enumerated in the answer, the court will not recognize a motion included within the body of the answer, but only those raised by a separate filing." *Id.* An affirmative defense such as collateral estoppel likewise may not be raised in a motion seeking reconsideration. *See LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir. 2005) ("A motion for reconsideration may not be used to . . . introduce new arguments."); *Brown v. Ill. Cent. R.R. Co.*, 480 F. App'x. 753, 754 (5th Cir. 2010) (holding statute-of-limitations argument waived where not raised in response to motion for summary judgment). Although Stanley included this argument in his Answer as his "Second Affirmative Defense," he failed to raise the defense via motion until he filed his motion for reconsideration, by which point the district court

had already entered partial summary judgment.  Therefore, Stanley waived the defense.  *See LeClerc*, 419 F.3d at 412 n.13.

## II.    **Willfulness**

Stanley asserts that the district court erred in finding that he had "willfully" attempted to evade his tax liabilities.  Specifically, he argues that his failure to pay his taxes was beyond his control, as it was caused by his bipolar disorder.  The district court determined that the evidence of Stanley's ability to carry out other complex tasks established that his failure to pay his taxes for so many years constituted a willful attempt to evade his tax liabilities. The court's assessment was not clearly erroneous.

Pursuant to 11 U.S.C. § 523(a)(1)(C), a discharge in bankruptcy under § 727 does not discharge tax liability where the debtor "willfully attempted in any manner to evade" the tax liability.  This provision exists "to ensure that the Bankruptcy Code's 'fresh start' policy is only available to honest but unfortunate debtors." *United States v. Coney*, 689 F.3d 365, 371 (5th Cir. 2012) (internal quotation marks and alteration omitted).  "[T]he party arguing against dischargeability bears the burden of proving the application of an exception by a preponderance of the evidence."  *Id.*  The "willful attempt" standard under § 523(a)(1)(C) has been interpreted to contain both a conduct requirement—that the debtor "attempted in any manner to evade or defeat [a] tax"—and a mental state requirement—that the attempt was "willful."  *Id.* (quoting § 523(a)(1)(C)).

Stanley does not contest that he satisfied the conduct requirement, arguing instead that his bi-polar disorder prevented him from forming the requisite "willful" mental state.  This court employs a three-pronged test to

determine willfulness in the tax evasion context, considering whether "the debtor (1) had a duty to pay taxes under the law, (2) knew he had that duty, and (3) voluntarily and intentionally violated that duty." *Id.* at 374 (citing *In re Bruner*, 55 F.3d 195, 197 (5th Cir. 1995)); *see also In re Fretz*, 244 F.3d 1323, 1330 (11th Cir. 2001). The third prong is satisfied by either "an affirmative act or culpable omission that, under the totality of the circumstances, constituted an attempt to evade or defeat the assessment, collection, or payment of a tax." *Coney*, 689 F.3d at 374, 376. "[T]he debtor need not have made their attempt with the specific intent to defraud the IRS." *Id.* at 374. Stanley concedes the first two prongs and argues only that his bipolar disorder prevented him from "voluntarily and intentionally" attempting to evade payment of a tax. This court has only once considered the issue of a debtor's mental state for a willful attempt to evade tax liabilities, and we did so under significantly different circumstances. *See id.* at 371. As noted in *Coney*, however, other courts have given substantial guidance on this issue. *Id.*

In determining willfulness in the evasion context, "nonpayment of tax alone is not sufficient to bar discharge of a tax liability." *In re Birkenstock*, 87 F.3d 947, 951 (7th Cir. 1996) (citing *In re Haas*, 48 F.3d 1153, 1158 (11th Cir. 1995)). If nonpayment alone were enough, then honest debtors would be denied discharge, for honest debtors may sometimes fail to pay their debts only because of insufficient resources. *Id.* Although nonpayment does not suffice on its own, "a 'knowing and deliberate' nonpayment provides the basis for determining that the tax debt is non-dischargeable." *In re Gardner*, 360 F.3d 551, 557 (6th Cir. 2004). Thus, for example, failure to pay taxes in conjunction with failure to file tax returns may indicate a willful state of mind. *See In re Toti*, 24 F.3d 806, 809 (6th Cir. 1994). Similarly, a debtor's failure to pay taxes

when he or she had the ability to pay, while not dispositive, can also suggest willfulness. *See Coney*, 689 F.3d at 378 n.4. As a result, evidence of lavish living while simultaneously failing to meet tax obligations may suggest voluntary and intentional violation of one's duty to pay taxes. *See, e.g.*, *United States v. Storey*, 640 F.3d 739, 745 (6th Cir. 2011) (reasoning that when a debtor makes a large purchase after he has "stopped paying taxes, there might be reason to suspect an intent to evade [his] tax obligations"); *In re Mitchell,* 633 F.3d 1319, 1329 (11th Cir. 2011) ("[W]illful intent is further shown by [the debtor's] discretionary spending, which included purchasing vacation timeshares, purchasing stock, repaying a $30,000 personal loan, and donating approximately $81,000 to his church."); *Gardner*, 360 F.3d at 560-61 (finding that debtor's choice to expend substantial sums on twenty golfing and vacation trips over three-year span instead of paying taxes was indicative of willfulness).

Although a lavish lifestyle is not dispositive, the district court appropriately considered Stanley's spending habits in determining whether he had "voluntarily and intentionally" attempted to evade taxes. During the period in which he neglected his tax obligations, Stanley entered into several fairly complicated real estate transactions wherein he put the property in his wife's name, at least in part to protect it from being seized in the course of a lawsuit, and he made timely mortgage payments. Stanley also purchased a number of luxury items during this time, including an expensive motorcycle, a number of automobiles, as well as a $16,000 ring and a $2,500 necklace for his wife, on which he generally made timely payments. In addition, Stanley established a wholly-owned corporation, of which he was the principal employee, though the corporation failed to withhold income taxes. Stanley

made numerous cash withdrawals from the corporation, which he turned over to his wife, although she did not do any work for the corporation. During the relevant time period, Stanley also accrued over 1,000 overdraft obligations. The district court noted that Stanley "testified that he put his mail, unopened, in a box, thus turning a blind eye to [his federal income tax] obligations yet simultaneously and timely servicing other debts." Stanley did pay certain taxes during this time, including various state taxes and a license-plate fee. After negotiations with the IRS, Stanley entered into an installment agreement regarding his liabilities for 1998-2003, but breached the agreement shortly thereafter. He generally failed to file timely tax returns and he underreported his income on those returns he did file. These actions indicate Stanley's willfulness.

Stanley does not dispute any of this evidence, but argues that, despite his lavish expenditures, his bipolar disorder rendered him incapable of forming the requisite mindset to willfully attempt to evade taxes. Indeed, Stanley argues that his profligate spending supports his contention that he was not in control of his own actions. Stanley's argument is belied by the evidence that during the relevant time period, he was able to continue to practice medicine and monitor his other debts. A debtor's ability to successfully carry out duties in a demanding profession is evidence of a corresponding ability to form a willful mindset to evade tax obligations. *See Fretz*, 244 F.3d at 1331 ("Put bluntly, someone who can control his drinking enough to perform medical procedures during twelve- to twenty-four hour shifts in an emergency room over a period of years can control his drinking enough to file tax returns and pay taxes during that same period."); *In re Hamer*, 328 B.R. 825, 835 (Bankr. N.D. Ala. 2005) (finding, based on his spending habits and ability to practice

No. 13-60704

medicine, that a debtor who entered drug rehabilitation at one point was still able to form the mental state to willfully attempt to evade taxes).  In light of Stanley's demonstrated ability to continue his medical practice, tend to many of his other financial obligations, and participate in complex financial transactions, compounded by the length of time at issue (over a decade) and evidence that Stanley would have had periods when he exhibited no symptoms of bipolar disorder during this span, the district court did not clearly err when it concluded that Stanley voluntarily and intentionally attempted to evade his tax obligations.  We therefore uphold the district court's finding that Stanley willfully attempted to evade his federal income taxes.[1]

## III.   Judicial Bias and Right to a Jury Trial

Stanley further argues that the district court judge should have recused himself due to bias and improperly denied him a jury trial.  As described by Stanley, both arguments stem from the district judge allegedly making "several invective statements concerning the facts of this case" in his order

---

[1] In his discussion of the mental state requirement, Stanley makes a number of other arguments that merit no more than a passing mention. Stanley briefly argues that the Government's attempt to collect his outstanding tax liabilities amounts to "overt class discrimination" and "tax profiling" in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment as well as the Taxpayer Bill of Rights, Pub. L. No. 104-168, § 301(a), 110 Stat. 1452 (1996).  Stanley also states that the district court's order granting partial summary judgment evinced an application of the "McNaughten Rules," which are not applicable to an evaluation of willfulness under § 523(a)(1)(C). Finally, Stanley argues that because he suffers from bipolar disorder, punishing him for behavior outside of his control as a result of his disorder would violate the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213 (2000).  Stanley cites no relevant authority or evidence in support of any of these claims, nor does he explain them in any detail.  Due to Stanley's failure to brief these issues in any meaningful sense, we do not consider them. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument.").

granting in part and denying in part summary judgment.  Neither argument has merit.

A district court judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a), and "[h]e shall disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party," *id.* § 455(b)(1).  Stanley's allegations of bias derive from the district court's statements considering, on motion for summary judgment, whether Stanley acted willfully in attempting to evade his 1998-2004 tax liabilities.  Stanley argues that the district judge demonstrated bias in his summary judgment order by, for example, characterizing Stanley's evidence as "strained" and noting that "it is hard to envision a debtor violating the conduct requirement [of the willfulness test] without also violating the mental state requirement because an attempt requires some form of intent to commit an act."  However, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion" and "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Andrade v. Chojnacki*, 338 F.3d 448, 462 (5th Cir. 2003) (noting that "*Liteky* draws no distinction based on the type of proceeding, and none is warranted").  Such remarks do not suggest bias "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Litkey*, 510 U.S. at 555; *see also United States v. Scroggins*, 485 F.3d 824, 830 (5th Cir. 2007) (finding no abuse of discretion in denial of recusal motion where "[t]he facts . . . do not demonstrate bias and impartiality that are personal—as distinguished from judicial—in nature").  Stanley's argument is particularly weak here, as he alleges that the

district judge's statements demonstrated bias against Stanley's "willfulness" argument, but the statements to which Stanley points came from the district judge's consideration, and ultimate *denial*, of the Government's motion for summary judgment on the "willfulness" issue.  Because the district judge's statements do not demonstrate "a deep-seated favoritism or antagonism that would make fair judgment impossible," they fail to support a claim for bias or prejudice.  *See Liteky*, 510 U.S. at 555.

Stanley's contention that he was wrongly denied a jury trial is similarly meritless.  Proceedings concerning the nondischargeability of debts are equitable in nature and therefore "[b]ankruptcy litigants . . . have no Seventh Amendment right to a jury trial in dischargeability proceedings."  *In re Hashemi*, 104 F.3d 1122, 1124 (9th Cir. 1996); *In re Hallahan*, 936 F.2d 1496, 1505 (7th Cir. 1991) ("[A] dischargeability proceeding is a type of equitable claim for which a party cannot obtain a jury trial.").  Stanley therefore had no right to a jury to determine the dischargeability of his income tax liability.  Although Stanley did have a right to a jury trial as to the liability and amount of his unpaid taxes, he does not dispute those aspects of the Government's claim.  *See In re Merrill*, 594 F.2d 1064, 1068 (5th Cir. 1979).  Thus, the district court did not err in denying Stanley's request for a jury trial.

## CONCLUSION

For these reasons the district court's judgment is AFFIRMED.